904 A.2d 464

**FOOD LION, INC.**

v.

**Daniel McNEILL.**

No. 2, Sept. Term, 2004.

Court of Appeals of Maryland.

Aug. 2, 2006.

716

David A. Skomba (Laura L. Stephens of Franklin & Prokopik, on brief), Baltimore, MD, for Appellant.

Keith R. Siskind (Michael D. Steinhardt, P.C., on brief), Glen Burnie, MD, for Appellee.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

The issue in this case is whether the testimony of an expert may be excluded at trial on the basis of a disclosure, made during discovery in response to interrogatories, that has neither been claimed nor determined to be a discovery violation, but that is challenged at trial as deficient for failing to provide information as required by Maryland Rule 2–402(f)(1)(A).[1] We shall hold that it cannot be excluded on this basis.

The rules governing discovery in civil cases in the circuit courts of this State are codified in Title 2, Chapter 400 of the Maryland Rules of Practice and Procedure. It is well settled that, having been developed and refined over many years, one of the fundamental and principal objectives of the discovery rules is to require a party litigant, in response to a discovery request, to disclose fully all of the facts requested by adver-

---

1. Maryland Rule 2–402(f)(1)(A) provides:

"(f) *Trial Preparation–Experts.*

"(1) *Expected to Be Called at Trial.*

"(A) Generally. A party by interrogatories may require any other party to identify each person, other than a party, whom the other party expects to call as an expert witness at trial; to state the subject matter on which the expert is expected to testify; to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion; and to produce any written report made by the expert concerning those findings and opinions. A party also may take the deposition of the expert."

saries and, thereby, eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind concerning the facts that gave rise to the litigation, *see Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 31, 878 A.2d 567, 585 (2005); *Berrain v. Katzen*, 331 Md. 693, 697, 629 A.2d 707, 708 (1993); *Androutsos v. Fairfax Hospital*, 323 Md. 634, 638, 594 A.2d 574, 576 (1991); *Public Service Comm'n v. Patuxent Valley Conservation League*, 300 Md. 200, 216, 477 A.2d 759, 767 (1984); *Kelch v. Mass Transit Administration*, 287 Md. 223, 229–30, 411 A.2d 449, 453 (1980); *Klein v. Weiss*, 284 Md. 36, 55, 395 A.2d 126, 137 (1978); *Mason v. Wolfing*, 265 Md. 234, 236, 288 A.2d 880, 881 (1972); *Williams v. Moran*, 248 Md. 279, 291, 236 A.2d 274, 281–82 (1967); *Pfeiffer v. State Farm Mut. Auto. Ins. Co.*, 247 Md. 56, 60–61, 230 A.2d 87, 90 (1967); *Caton Ridge, Inc. v. Bonnett*, 245 Md. 268, 276, 225 A.2d 853, 857 (1967); *Miller v. Talbott*, 239 Md. 382, 387–88, 211 A.2d 741, 744–45 (1965); *Guerriero v. Friendly Finance Corp.*, 230 Md. 217, 222–23, 186 A.2d 881, 884 (1962), in other words, to encourage liberal discovery and minimize surprise at trial. *Barnes v. Lednum*, 197 Md. 398, 406–07, 79 A.2d 520, 524 (1951) ("Modern discovery statutes or rules are intended to facilitate discovery, not to stimulate the ingenuity of lawyers and judges to make the pursuit of discovery an obstacle race."); *Hallman v. Gross*, 190 Md. 563, 574, 59 A.2d 304, 309 (1948) ("The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."). *See State Roads Comm'n v. 370 Ltd. Partnership*, 325 Md. 96, 106–111, 599 A.2d 449 (1991).

Noting "that they are broad and comprehensive in scope, and were deliberately designed to be so," this Court, in *Balto. Transit v. Mezzanotti*, 227 Md. 8, 13, 174 A.2d 768, 771 (1961), has elaborated:

> "If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able properly to prepare their claims and defenses, thereby

advancing the sound and expeditious administration of justice."

Comprehensive and well-conceived, the rules, in order to facilitate achievement of their purpose, include provisions prescribing the forms of discovery that may be utilized, see Rule 2–401(a),[2] addressing the scope of discovery, Rule 2–402, identifying the proper subjects of discovery, Rule 2–402(a),[3] requiring the scheduling of discovery matters and certain pretrial, dispositive motions, Rule 2–504,[4] and providing for sanc-

---

**2.** Maryland Rule 2–401(a) provides:

"(a) *Discovery Methods.* Parties may obtain discovery by one or more of the following methods: (1) depositions upon oral examination or written questions, (2) written interrogatories, (3) production or inspection of documents or other tangible things or permission to enter upon land or other property, (4) mental or physical examinations, and (5) requests for admission of facts and genuineness of documents.

"(b) Sequence and Timing of Discovery. Unless the court orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery. The court may at any time order that discovery be completed by a specified date or time, which shall be a reasonable time after the action is at issue.

**3.** Maryland Rule 2–402(a) provides:

"(a) *Generally.* A party may obtain discovery regarding any matter, not privileged, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter, if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. It is not ground for objection that the information sought is already known to or otherwise obtainable by the party seeking discovery or that the information will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. An interrogatory or deposition question otherwise proper is not objectionable merely because the response involves an opinion or contention that relates to fact or the application of law to fact."

This section applies except as limited by other sections of the Rule.

**4.** Maryland Rule 2–504(a) requires, unless the County Administrative Judge determines otherwise in a category of case, that a scheduling order be filed in every case, in the form prescribed by the administra-

tions in the event of violation.  Rule 2–433.[5]

tive judge.  Subsection (b), "Contents of Scheduling Order," sets out the required elements of such an order.  It provides:

"(1) *Required.* A scheduling order shall contain:

"(A) an assignment of the action to an appropriate scheduling category of a differentiated case management system established pursuant to Rule 16–202;

"(B) one or more dates by which each party shall identify each person whom the party expects to call as an expert witness at trial, including all information specified in Rule 2–402(f)(1);

"(C) one or more dates by which each party shall file the notice required by Rule 2–504.3(b) concerning computer-generated evidence;

"(D) a date by which all discovery must be completed;

"(E) a date by which all dispositive motions must be filed;  and

"(F) any other matter resolved at a scheduling conference held pursuant to Rule 2–504.1."

On the other hand, subsection (c) permits other elements to be included in a scheduling order:

"(A) any limitations on discovery otherwise permitted under these rules, including reasonable limitations on the number of interrogatories, depositions, and other forms of discovery;

"(B) the resolution of any disputes existing between the parties relating to discovery;

"(C) a date by which any additional parties must be joined;

"(D) a specific referral to or direction to pursue an available and appropriate form of alternative dispute resolution, including a requirement that individuals with authority to settle be present or readily available for consultation during the alternative dispute resolution proceeding, provided that the referral or direction conforms to the limitations of Rule 2–504.1(e);

"(E) an order designating or providing for the designation of a neutral expert to be called as the court's witness;

"(F) a further scheduling conference or pre-trial conference date;  and

"(G) any other matter pertinent to the management of the action."

Contempt is also a possible sanction when a failure to comply with an order compelling discovery has been found.  Rule 2–433(b).

5.  The sanctions permitted pursuant to Maryland Rule 2–433 are:

"(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

"(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matter in evidence;  or

"(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the

A party's responsibilities with regard to disclosures involving expert witnesses are also addressed in the discovery rules. Rule 2–402(f)(1)(A) permits a party, by interrogatories to the other party, to require disclosure of each expert that party intends to call as a witness, the subject matter of that testimony, the substance of the expert's findings and opinions, along with a summary of the grounds for each, and production of any written report the expert made concerning those findings and opinions. The discovery rules do not address, except insofar as it is implied in the sanctions prescribed, the admissibility at trial of the expert testimony, however. That matter is addressed, and expressly so, in Title 5, "Evidence," Chapter 7, "Opinions and Expert Testimony," of the Rules. Rule 5–702 provides, in that regard:

> "Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony."

moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party. If, in order to enable the court to enter default judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury."
Rule 2–433 (a). In lieu of, or in addition to, any of the above sanctions, in the absence of a finding that the failure of discovery was substantially justified or that other circumstances would make an award of expenses unjust, "the reasonable expenses, including attorney's fees, caused by the failure" may be assessed against the failing party or the attorney advising the failure to act, or both. *Id.* Prerequisite to the imposition of sanctions are a motion filed pursuant to Rule 2–432(a) and an opportunity for hearing.

With this backdrop, we will consider the issue, for the resolution of which we granted certiorari prior to its consideration by the Court of Special Appeals, namely: whether testimony of an expert may be excluded at trial on the basis of a disclosure, made during discovery, in response to interrogatories, that has neither been claimed nor determined to be a discovery violation, but that is challenged at trial as deficient for failing to provide information required by Rule 2–402(f)(1)(A).[6] The Circuit Court for Anne Arundel County held that it could and, in fact, excluded the causation opinion testimony of the expert witness called by the appellee, Daniel McNeill (McNeill or the appellee), on that basis. An in banc panel of that court reversed that judgment. For the reasons that follow, we shall affirm the in banc panel.

## I.

Beginning in September 2000, the appellee was employed by the appellant, Food Lion (Food Lion or the appellant), as a meat cutter. His duties included cutting large pieces of meat, handling and wrapping trays of meat, and operating a meat grinder. In the fall of 2001, McNeill began experiencing pain and numbness in his hands and pain radiating from his elbows. He consulted a doctor in connection with this condition, who subsequently diagnosed it as bilateral carpal tunnel syndrome and right cubital tunnel syndrome. Dr. Fulton was that doctor.

McNeill filed a claim with the Workers' Compensation Commission (the Commission). He alleged that his carpal tunnel and cubital tunnel syndromes were occupational diseases[7] caused by his job duties as meat cutter. Following a hearing,

---

6. The question, as framed by the appellant, is:

   "Did the trial court correctly and within its sound discretion preclude the claimant's expert witness from testifying as to his opinion on causation when the basis of that opinion was never disclosed during discovery nor in accordance with the court's scheduling order?"

7. Maryland Code (1991, 1999 Repl.Vol., 2005 Supp.) § 9–101 of the Labor and Employment Article provides:

the Commission denied the claim, finding that the appellee's condition did not arise "out of and in the course of employment." McNeill sought judicial review of this decision in the Circuit Court for Anne Arundel County, pursuant to Maryland Code § 9–737 of the Labor and Employment Article.[8]

The Circuit Court, in preparation for trial, issued a scheduling order prescribing when discovery materials were required to be submitted. With regard to expert witnesses, the Order provided:

"the Proponents not later than February 4, 2003 and the opponents, than March 4, 2003 shall furnish to opposing counsel the names and addresses of all expert witnesses and such other information regarding expert witnesses as is required by the Maryland Rules of Procedure, Sec. 2–402(e)(1).[9] Expert testimony not so identified shall be inadmissible at trial except for good cause shown."

---

"(g) 'Occupational disease" means a disease contracted by a covered employee:
"(1) as the result of and in the course of employment; and
"(2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated."

8. Section 9–737 provides:
"An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by:
"(1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules;
"(2) attaching to or including in the petition a certificate of service verifying that on the date of the filing a copy of the petition has been sent by first class mail to the Commission and to each other party of record; and
"(3) on the date of the filing, serving copies of the petition by first class mail on the Commission and each other party of record."

9. The scheduling order in this case was entered prior to the adoption of the Rules Order dated November 12, 2003 resulting in present Rule 2–403(f)(1)(A). When the scheduling order in this case was entered, the applicable Rule was Rule 2–402(e)(1), which provided:
"(e) Trial Preparation–Experts.

The Order also required that "any motions [f]or summary judgment or other dispositive motions shall be filed no later than March 20, 2003."

During the discovery process and prior to the deadline, Food Lion sent McNeill a series of interrogatories, interrogatory number two of which asked him to:

> "Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and attach to your answers any written report made by the expert concerning those findings and opinions."

McNeill answered by listing the name of Dr. Fulton and his address. In addition, he advised: "a copy of Dr. Fulton's reports are attached. Dr. Fulton will testify as to the contents of his medical reports, and the causal relationship of the Claimant's Carpal Tunnel Syndrome to his employment. Further records from North Arundel Hospital will be supplemented." The appellee also attached the medical reports and Dr. Fulton's notes regarding the appellee's follow-up appointments. Subsequently, the appellee forwarded to the appellant's counsel a letter, dated April 4, 2002, from Dr. Fulton, which, in its entirety, stated: "It is my opinion that Mr.

---

"(1) Expected to Be Called at Trial. Discovery of findings and opinions of experts, otherwise discoverable under the provisions of section (a) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained without the showing required under section (c) of this Rule only as follows: (A) A party by interrogatories may require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and to produce any written report made by the expert concerning those findings and opinions; (B) a party may obtain further discovery, by deposition or otherwise, of the findings and opinions to which an expert is expected to testify at trial, including any written reports made by the expert concerning those findings and opinions."

McNeill's carpal tunnel and ulnar cubital tunnel problems are directly and causily [sic] related from his repetitive work as a meat cutter at Food Lion."

Although the appellant noted the deposition of Dr. Fulton's custodian of records and obtained additional records from Dr. Fulton's office, at no time, before or after the expiration of the discovery deadline did it challenge the adequacy or the sufficiency of the appellee's response to interrogatory number two. Certainly, the appellant did not file a motion to compel. Nor did the appellant move for summary judgment.

On the day of trial, the appellant made an oral motion to prohibit Dr. Fulton from testifying as to the causation between the appellee's conditions and his employment.[10] Noting Rule 2–402's requirement that "disclosure of an expert's opinion must include the summary of the grounds of that opinion," it maintained that Dr. Fulton's "one sentence letter ... simply stating that the claimant's condition was causally related to his work" was deficient in that regard. The appellant argued:

"If you look at Dr. Fulton's opinion on causal relationship, you will see that's exactly what it is. It is a simple opinion stating his conditions related to his work as a meat cutter. Period. There is no basis. There is no discussion of the claimant's specific job duties. There is no discussion of duration of time that he worked there. There is no discussion of the environment of his job. There is no discussion of the onset of his symptoms, when he first noticed them. There is no discussion of ruling out any of the other many factors for developing carpal tunnel syndrome.

"In short, he doesn't provide [in his report] a factual basis for why he believes the opinion that he rendered. The only thing he offers in one medical report is what the claimant notes to be his symptoms and that he notes that his

---

**10.** Although the transcript indicates that counsel for Food Lion made an oral motion to exclude the testimony of Dr. Fulton, the record reflects that she also filed on the morning of trial "Food Lion Inc.'s Memorandum in Support of Motion to Exclude the Expert Testimony of Dr. E.C. Fulton and Attachments."

symptoms are worse at the end of the workday. Noting the claimant's opinion is not sufficient to carry the expert's opinion."

Relying on *Giant Food v. Booker*, 152 Md.App. 166, 188, 831 A.2d 481, 493 (2003), the appellant submitted that Dr. Fulton was "render[ing] an opinion of the type where [the expert] opine[s] it is so because I say so." It concluded that, because no summary of the grounds for the causation opinion was given and discovery was closed, Dr. Fulton should not be permitted to:

> "[c]ome in now and provide additional bases for [his causation] opinion.... All of his opinion have been provided and it would be unfair to render a new opinion or an additional basis for those opinions, which my expert would not have an opportunity to rebut or refute."

McNeill rejoined that Food Lion's motion was untimely. Charactering the motion as coming within the orders that the *PRETRIAL ORDER* required to be filed 20 days prior to the scheduled trial date,[11] he noted what he considered to be an inconsistency in the approach taken by Food Lion:

> "As you know, the motion to exclude the testimony of Dr. Fulton was filed this morning. The defense counsel would like for you to rely on the pretrial order when it comes to the closing of discovery, but wants you to okay the fact that a motion to exclude the testimony of Dr. Fulton is sufficient to be filed today, as opposed to 20 days before the trial date."

The appellee also argued that it would be improper to exclude Dr. Fulton's testimony "based on this particular pretrial mo-

---

11. The scheduling order set a *Pre-trial and Settlement Conference.* At the conclusion of that conference, the hearing judge passed a *PRE-TRIAL ORDER*, signed by both counsel, a provision of which, paragraph 9, provided:

"9 *Motions In Limine, Preliminary Motions and/or Pretrial Memoranda*

"Any Motions In Limine, preliminary Motions or Pretrial Memoranda must be filed no later than twenty days prior to the scheduled trial date."

tion," drawing a distinction between an evidentiary ruling made by the court pursuant to Rule 5–702 after hearing Dr. Fulton's testimony and the reasons for his causation opinion, and one premised on insufficient discovery.

The Circuit Court rejected the appellee's arguments and using a Rule 5–702 analysis, granted Food Lion's motion to preclude the appellee's expert from testifying "as to the basis of his medical opinions." At the conclusion of the appellee's case,[12] the court granted Food Lion's motion for judgment, concluding that the one sentence report from Dr. Fulton "would not be adequate for you to sustain your burden of proof in this case. There is no medical conclusion."

McNeill, rather than note an appeal to the Court of Special Appeals, opted for review of the judgment by an in banc panel of the Circuit Court. That panel reversed the judgment of the trial court, holding that the trial court's exclusion of the appellee's expert's testimony on causation was clearly erroneous.[13] It reasoned:

---

12. Although the trial court indicated that it was going to grant the appellant's motion to preclude plaintiff expert testimony as to causation, it conceded that the appellee could call his witness and attempt to elicit his opinions, "if you want to go through that exercise." It made clear, however,

"I am positive that I would find that he had to state medical reasons, which were the basis of his opinion. And when that happened, I would have to preclude that testimony, because it was not given over in discovery.

"So we can go through that exercise, if you want to. And I am trying to make the record very clear. I am not saying you cannot put your witness on. You can put your witness on for those purposes. But there is no question under the case law, especially the one that she cited us today—that is almost the predicament they were in there. They got through steps one and two, basically, but couldn't get through step three. And so I guess retroactively they had to exclude the testimony in that case.

"I mean, we can all do that, if that is what you choose."

The court sustained every objection that Food Lion made to questions that would have elicited testimony as to causation.

13. Two issues were presented to the in banc panel: "whether the filing of Respondent's Motion to Exclude Testimony of Dr. Edwin Fulton violated the Pre–Trial Order of the Court" and "Whether the Trial Court erred in granting the Respondent's Motion to exclude Expert Testimony

"While it was very brief, the report [of Dr. Fulton] was sufficient to inform any reader that the medical expert based his opinion, in part, upon Petitioner's repetitive work as a meat cutter and it is logical to assume that he refers to the repetitive arm motion that would reasonably be expected of a meat cutter. Dr. Fulton had indicated the causal connection between the alleged disability (carpal tunnel and cubital tunnel) and the event which caused it (Petitioner's repetitive work as a meat cutter at Food Lion)."

Significantly, the panel observed, as well, that

"Respondent did not object to Petitioner's Answer to Interrogatories, did not file a Motion to Compel, and did not take Dr. Fulton's deposition. In addition, the same information had previously been presented to the [Workers' Compensation] Commission, of which Respondent was aware."

The panel also rejected the trial court's and Food Lion's reliance on *Booker*, concluding that Dr. Fulton's was "not an opinion where an expert opined that a matter 'was so just because he said it was so.' " It relied, in that regard, on Dr. Fulton's testimony at trial, without objection, to the diagnostic tests McNeill had taken and that they confirmed his diagnosis. In addition, the panel observed that the discovery responses of the appellee made clear that he would be relying on Dr. Fulton's testimony to explain his reports and the causal connection between his condition and his employment.

Food Lion timely noted an appeal to the Court of Special Appeals. On our own motion and prior to proceedings in that

---

of Dr. Edwin Fulton." The in banc panel resolved the appeal by addressing the second issue, thus finding it unnecessary to reach the first, the procedural, issue. It did observe, however,

"The Pre–Trial Order clearly provided that all preliminary motions and motions *in limine* be filed at least 20 days prior to the trial date. The reasons for the requirement were developed over a period of time with input from the Bar and upon the experience of the Court. In this case, Respondent presented the Motion on the morning of trial, which took a significant amount of time and energy to resolve. The Pre–Trial Order was intended, in part, to avoid such an occurrence."

court, this Court granted certiorari. *Food Lion v. McNeill,* 380 Md. 232, 844 A.2d 428 (2004).[14]

14. Food Lion, the appellant, prevailed at trial in the Circuit Court for Anne Arundel County. Rather than noting an appeal to the Court of Special Appeals, the appellee, Daniel McNeill, sought in banc review in that court, pursuant to Maryland Constitution, Article IV, § 22; Rule 2–551(a) and (b). Being aggrieved by the decision of the in banc panel, which reversed the judgment of the trial court, Food Lion noted a timely appeal to the Court of Special Appeals, pursuant to Rule 2–551(h), which, by its express terms permits an appeal from the decision of an in banc panel to that court. That is in direct contrast with the Maryland Constitution, Article IV, Section 22, which, while making clear that an in banc decision is "conclusive as against the party at whose motion said points, or questions were reserved," states that it "shall not preclude the right of Appeal, or writ of error of the adverse party, in those cases, civil or criminal, in which appeal, or writ of error *to the Court of Appeals* may be allowed by law." (emphasis added). Subsequently, we filed our opinion in *Bienkowski v. Brooks,* 386 Md. 516, 873 A.2d 1122 (2005). In that opinion, noting the clear and unambiguous use of the words "Court of Appeals," in the Constitutional provision and interpreting that use as a clear indication that unsuccessful appellees may appeal only to the Court of Appeals, *id.* at 543–544, 873 A.2d at 1138, this Court held that the Court of Special Appeals does not have jurisdiction to hear appeals from in banc panels. *Id.* at 544, 873 A.2d at 1138. Explicating this holding, we said:

"Under the only reasonable interpretation of Article IV, § 22, in light of the present statutory provisions governing the Court of Appeals' jurisdiction, an appellee in the court in banc, after an appealable judgment by the court in banc, is entitled to file in the Court of Appeals a petition for a writ of certiorari pursuant to the current statutory provisions and rules governing certiorari petitions and certiorari practice in the Court of Appeals. The Court of Appeals will consider such certiorari petitions in the same manner in which it considers other certiorari petitions, and will either deny them or grant them. As with other certiorari petitions, the Court of Appeals, if it decides to grant a petition for review of an in banc decision, may limit the issues which it will consider or may add issues to those presented by the petitioner."

*Id.* at 549, 873 A.2d at 1141.

We also addressed the situation presented by this case. In *Bienkowski,* the appellee in the in banc appeal, timely noted an appeal to the Court of Special Appeals and the appellant subsequently filed a petition for certiorari, which this Court granted. 376 Md. 49, 827 A.2d 112 (2003). Relying on *Shell Oil Co. v. Supervisor,* 276 Md. 36, 49–50, 343 A.2d 521, 529 (1975) for the proposition, "Under settled Maryland law, if a case is timely filed in a Maryland court which is not authorized to exercise jurisdiction over the merits of the case, but if another Maryland court is authorized to exercise jurisdiction, the former court may transfer the case to the court which can properly exercise jurisdiction,"

## II.

■ Maryland Rule 5–702, which codified the modern common-law rule regarding expert testimony, *see Sippio v. State,* 350 Md. 633, 649, 714 A.2d 864, 872 (1998), guides our resolution of this case. That rule governs the admissibility of expert testimony, *see Bryant v. State,* 393 Md. 196, 900 A.2d 227 (2006), and describes the basic standard to be applied when the inquiry is into its admissibility. *State v. Smullen,* 380 Md. 233, 269, 844 A.2d 429, 450 (2004). Pursuant to that Rule, the trial court must determine, before admitting expert testimony, that: the witness is qualified, "by knowledge, skill, experience, training, or education" to testify as an expert; the matter about which the witness would testify is an appropriate one for such testimony; and there is "a sufficient factual basis" to support the witness's expert testimony. *See Sippio,* 350 Md. at 649, 714 A.2d at 872; *Simmons v. State,* 313 Md. 33, 41–42, 542 A.2d 1258, 1262 (1988).

Only one of the required determinations is at issue and in play in this case, the last, the determination of the sufficiency of the factual basis for the expert's conclusion on causation and, as presented, it requires the assessment of the accuracy of that determination. Food Lion candidly concedes that it challenges neither the qualifications of the appellee's expert nor the amenability or suitability of the operative issue to explication by expert testimony. "[T]he primary thrust of [its] challenge is that Dr. Fulton's opinion, as provided and dis-

*Bienkowski,* 386 Md. at 550, 873 A.2d at 1142, citing Maryland Rule 8–132, permitting transfer of timely filed, but improperly taken appeals to the appellate court "apparently having jurisdiction" and noting that "[t]he Court of Appeals treats the notices of appeal [in transferred cases] as if they were certiorari petitions, although these litigants are given an opportunity to file supplements to the petitions if they so desire. *The cases are then dealt with in the same manner as all other* certiorari petitions," *Id.* at 552, 873 A.2d at 1143, the Court concluded that the merits of that case were properly before it.

This case is similarly properly in this Court. Although the appellant's appeal to the Court of Special Appeals was improper, it was timely. Moreover, while it was pending in the Court of Special Appeals, but before proceedings in that court, this Court issued, on its own motion, a writ of certiorari.

closed during discovery, lacked a sufficient basis and that it fails the test of the third prong of Rule 5–702 and is thus subject to exclusion." Food Lion maintains, in other words, that, when making the factual basis determination, as a preliminary matter, whether or not sufficiency has been challenged, a trial court may, indeed, must, assess the adequacy of the affected party's responses to discovery requests. Implicit in this position, therefore, is that there can be, and, in this case, there was, "a substantial and not merely a technical violation of discovery," [15] which not only is noticeable, but is sanctionable, by application of the evidence rules.

Food Lion has not directed our attention to any case that has directly endorsed the melding of the discovery and evidence rules that it advocates. The cases, on which it relies, *Booker*, 152 Md.App. 166, 831 A.2d 481; *Carter v. Shoppers Food Warehouse MD Corp.*, 126 Md.App. 147, 727 A.2d 958 (1999); *Franch v. Ankney*, 341 Md. 350, 670 A.2d 951 (1996), certainly do not do so. Nor does *Wood v. Toyota Motor Corp.*, 134 Md.App. 512, 760 A.2d 315, *cert. denied* 362 Md. 189, 763 A.2d 735 (2000), on which *Booker* heavily relied. In each of those cases, Rule 5–702 was applied in its traditional and usual context, as an evidence rule providing the standard for the admission of evidence, not in conjunction with and/or in furtherance of the discovery process.

"In *Booker*, the issue before the court, as in this case, was the sufficiency of the evidence of medical causation to permit the trial court to submit the case to the jury on that issue. 152 Md.App. at 170, 831 A.2d at 483. Unlike in this case, however, that issue was not generated during discovery or

---

**15.** The appellant justifies the trial court's ruling to exclude the expert testimony on this basis. It denies, however, that it is the kind of violation that would trigger the need for it to object, take a deposition or move to compel. That is so, Food Lion explains, because it does not object to the form of the answer or the opinion provided,

"Rather, it has been and remains Food Lion's position that the opinion provided is legally insufficient in that it lacks a basis and that the basis was never provided in discovery. In sum, Food Lion simply wants to hold the Claimant to the discovery response as provided and to preclude anything more than was provided prior to trial."

resolved on the basis of the witness's discovery responses. The ruling whose propriety was challenged by the appellant and reviewed by the intermediate appellate court was the trial court's denial of the appellant's motion for judgment notwithstanding the verdict. *Id.* at 176, 831 A.2d at 486. Thus, to be sure, the Court of Special Appeals reversed the judgment of the trial court, concluding that the expert testimony regarding causation did not rise above the level of mere speculation or conjecture, *id.* at 185, 831 A.2d at 492, but it did so on a full record, rather than on the basis of a response to discovery. *See Franch,* 341 at 361–65, 670 A.2d at 956–58 (holding that trial court properly struck expert testimony after it had been presented to the jury when it became clear that the testimony was based on an incorrect interpretation of the law.").

*Wood* presents a similar factual scenario. There, the trial court excluded the plaintiff's expert's opinion testimony, finding it to lack a sufficient factual basis and because the expert did not have the necessary qualifications, 134 Md.App. at 519, 760 A.2d at 319, and the Court of Special Appeals affirmed. *Id.* at 523, 760 A.2d at 321. Although the admissibility decision was made at a motion *in limine,* it was made on the basis of the expert's deposition testimony. *Id.* at 524, 760 A.2d at 322.

The dispute in *Carter* also turned on whether a sufficient factual basis existed to support the expert's testimony. 126 Md.App. at 156, 727 A.2d at 963. That dispute was resolved, not by reference to an interrogatory response, whose meaning or sufficiency was in issue, but, as in *Wood,* on the basis of the expert's testimony at deposition. *Id.* The intermediate appellate court affirmed the exclusion of the expert testimony, emphasizing the trial court's findings that

"there [were] no scientific or professional standards to support [the expert's] conclusion, that the expert performed no scientific testing, the only testing done was to flip over the corner of the mat with his foot, he interviewed [appellant] for twenty to thirty minutes, he inspected [the grocery store] for fifteen minutes four and a half years after the accident occurred, and the mats inspected were made by a

different company than [appellee] used at the time of the accident. Additionally, there is no law nor regulation governing the particular thickness of floor mats."

*Id.*

Moreover, the rule for which Food Lion advocates is inconsistent with and, indeed, would likely undermine the discovery scheme established by the discovery rules and, in particular, Rules 2–402, 2–432, 2–433 and 2–504. That scheme contemplates full disclosure by all parties so as to avoid surprises and to facilitate and "advanc[e] the sound and expeditious administration of justice." *Mezzanotti,* 227 Md. at 13, 174 A.2d at 771. It does so by requiring, in the first instance, broad and comprehensive disclosures, Rule 2–402(a); Rule 2–504, in response to requests in the forms prescribed, Rule 2–401(a), by providing a mechanism for addressing disputes concerning the necessity of complying with a disclosure request and the adequacy of any challenged disclosure, Rules 2–403(a),[16] 2–432 [17]; 2–504, and, where required, by prescribing sanctions to

---

16. Rule 2–403(a) provides:

"(a) *Motion.* On motion of a party or of a person from whom discovery is sought, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had, (2) that the discovery not be had until other designated discovery has been completed, a pretrial conference has taken place, or some other event or proceeding has occurred, (3) that the discovery may be had only on specified terms and conditions, including an allocation of the expenses or a designation of the time or place, (4) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery, (5) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters, (6) that discovery be conducted with no one present except persons designated by the court, (7) that a deposition, after being sealed, be opened only by order of the court, (8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way, (9) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."

17. Rule 2–432 addresses "Motions upon Failure to Provide Discovery." As relevant, it provides:

"(a) *Immediate Sanctions for Certain Failures of Discovery.* A discovering party may move for sanctions under Rule 2–433(a), without first

be imposed when a party fails to comply, either by not responding at all or responding inadequately. Rule 2–433.

The scheduling order, provided for by Rule 2–504, sets out the perimeters of the discovery process, prescribing the time limits for responding to discovery requests and, ultimately, for completing the discovery process itself. Anticipating that the parties may not always comply with discovery requests, that there may be complete noncompliance, by failing to respond, or disputes as to the propriety or extent of the disclosure sought or required, Rules 2–403 and 2–432 provide a procedure and a mechanism whereby the compliance issues and disputes may be, and should be, resolved. And the rules recognize the need for there to be sanctions; without sanctions, compliance with the discovery rules could not be enforced and, thus, certainly could not be assured. Moreover, sanctions are necessary to insure that a non-complying or

---

obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of a party or a person designated under Rule 2–412(d) to testify on behalf of a party, fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2–421 or to a request for production or inspection under Rule 2–422, after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2–403.

(b) *For Order Compelling Discovery.*

"(1) *When Available.* A discovering party, upon reasonable notice to other parties and all persons affected, may move for an order compelling discovery if

"(A) there is a failure of discovery as described in section (a) of this Rule,

"(B) a deponent fails to answer a question asked in an oral or written deposition,

"(C) a corporation or other entity fails to make a designation under Rule 2–412(d),

"(D) a party fails to answer an interrogatory submitted under Rule 2–421,

"(E) a party fails to comply with a request for production or inspection under Rule 2–422,

"(F) a party fails to supplement a response under Rule 2–401(d), or

"(G) a nonparty deponent fails to produce tangible evidence without having filed written objection under Rule 2–510(f).

defaulting party, does not benefit from that party's default or non-compliance. Thus, when the trial court determines that a party has failed to comply with discovery requests, it may order: that the subjects of the discovery requests be taken as established for the purpose of the action, Rule 2–433(a), that the defaulting party not be permitted to support or oppose claims or defenses, or introduce certain evidence, Rule 2–433(b), that proceedings be stayed and/or pleadings or parts of pleadings stricken or stayed, until discovery is provided, or that the action, or a part, be dismissed or a judgment by default be entered. Rule 2–433(c).

The result that the appellant was able to achieve by melding the discovery rules and the evidence rules was achievable by application of the discovery rules alone. Discovery violations are cognizable by the trial court during the discovery process and, of course, are sanctionable when they are found. And, as we have seen, there are mechanisms in place for that to happen. It follows that discovery issues are best handled during the discovery period; that serves the interest of efficient trial administration. If, therefore, as the appellant maintains, the appellee's expert's report was a violation of discovery, and a substantial one, at that, it should have been, and could have been, addressed during the discovery process and, if determined to have been one, sanctioned as such.

■■ It is well-settled, moreover, that an expert's opinion "has no probative force unless a sufficient basis to support a rational conclusion is shown." *State ex rel. Stickley v. Critzer,* 230 Md. 286, 290, 186 A.2d 586, 588 (1962). *See Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 741–42, 625 A.2d 1005, 1012–13 (1993); *Bohnert v. State,* 312 Md. 266, 275, 539 A.2d 657 (1988); *Surkovich v. Doub,* 258 Md. 263, 272, 265 A.2d 447, 451 (1970); *State Health Dep't v. Walker,* 238 Md. 512, 520, 209 A.2d 555 (1965). But that determination—whether there is a sufficient factual predicate for the expert opinion—is not one to be made by the expert whose opinion is at issue or by any of the parties, including the party challenging the expert opinion; rather, it is a determination that must

be made by the trial court, *Rollins v. State,* 392 Md. 455, 499–500, 897 A.2d 821, 847 (2006); *In re Adoption/Guardianship No. CCJ14746,* 360 Md. 634, 647, 759 A.2d 755, 762 (2000), in whose discretion the determination of expert testimony is entrusted. *Buxton v. Buxton,* 363 Md. 634, 650–51, 770 A.2d 152, 161–62 (2001).

The appellant submits that, because it did not object to the form of the answer that the appellee gave to its discovery request and wanted only to test the sufficiency of the basis of the appellee's expert's opinion, as of that time, it was under no obligation to challenge the appellee's answer, or take the appellee's expert's deposition, notwithstanding his belief that the appellee had violated discovery, as the trial court necessarily found. If the appellant is correct, an element of surprise, albeit not from the perspective of the requestor, but from the perspective of the discloser, will be introduced in the process. Suddenly, we will have returned to the time when nondisclosure was the order of the day and disclosure was not encouraged and when discovery was an obstacle course. *Hallman v. Gross,* 190 Md. at 574, 59 A.2d at 308. A party who answers a discovery request timely and does not receive any indication from the other party that the answers are inadequate or otherwise deficient should be able to rely, for discovery purposes, on the absence of a challenge as an indication that those answers are in compliance, and, thus not later subject to challenge as inadequate and deficient when offered at trial. *See Franch,* 341 Md. at 365, 670 A.2d at 958 (noting that the appellees were on notice as to the appellant's challenge to the admissibility of the testimony of the experts, which later was stricken).

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, IN BANC, AFFIRMED, WITH COSTS.**