7 A.3d 160

**GALLAGHER EVELIUS & JONES, LLP**

**v.**

**JOPPA DRIVE–THRU, INC., d/b/a Checkers.**

**No. 0356, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 28, 2010.

Ward B. Coe, III (Matthew W. Oakey, Gallagher, Evelius & Jones LLP, on the brief), Baltimore, for appellant.

Donald Proctor (Proctor & McKee PA, on the brief), Towson, for appellee.

Panel: ZARNOCH, WRIGHT, RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

RAYMOND G. THIEME, JR., J. (Retired, Specially Assigned).

■ In a currently pending declaratory judgment action filed by Joppa Perring, LLC ("Joppa Perring") against appellee, Joppa Drive–Thru, Inc., d/b/a Checkers ("Checkers"), the Circuit Court for Baltimore County granted Checkers' motion for an order to compel production of documents directed at Joppa Perring and appellant Gallagher Evelius & Jones ("GEJ"), a Baltimore law firm.[1] GEJ, a non-party to the underlying declaratory judgment action, filed a timely notice of appeal following the circuit court's April 7, 2009 order requiring GEJ to disclose the documents to Checkers.[2]

GEJ raises two questions for our consideration, which we have consolidated and rephrased: Did the circuit court err in granting Checkers' motion for an order to compel production of documents, which GEJ alleged were subject to attorney-client and/or work product privilege? [3] For the reasons that follow, we find no error on the part of the circuit court and affirm the order to compel.

---

**1.** Joppa Perring is not a party to this appeal but filed a brief as *amicus curiae*.

**2.** Although GEJ notes its appeal from an interlocutory discovery order, which is ordinarily not appealable, as a non-party to the litigation, the circuit court's order on the motion to compel is considered a final judgment as to GEJ, and it thus may appeal that order. *See St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.,* 392 Md. 75, 90, 896 A.2d 304 (2006) ("In situations where the aggrieved appellant, challenging a trial court discovery or similar order, is not a party to the underlying litigation in the trial court, ... Maryland law permits the aggrieved appellant to appeal the order because, analytically, it is a final judgment with respect to that appellant.").

**3.** The questions as posed by GEJ in its brief are:
I. Did the circuit court err in granting Checkers' motion to compel production of privileged documents solely because GEJ did not utilize the set-up format in its opposition to the motion to compel?
II. Did the circuit court err by failing to deny the motion to compel because Checkers failed to establish that GEJ represented it and Joppa Perring in the same transaction or that Checkers was in any event barred from access to the disputed documents?

## FACTS and PROCEEDINGS

In 1998, Checkers entered into a lease with Joppa Perring Limited Partnership ("JPLP"), which enabled Checkers to operate a fast food restaurant at the Joppa Heights Shopping Center in Baltimore County. The initial lease term began on February 25, 1998, but the lease provided Checkers the right to extend for seven consecutive five year periods if it provided written notice of its intent to extend the lease to JPLP at least 365 days prior to the expiration of the current term.[4]

In 2008, Joppa Perring sought to purchase the Joppa Heights Shopping Center from JPLP, and GEJ represented Joppa Perring in the purchase. On June 9, 2008, GEJ, on behalf of Joppa Perring, contacted Philip Dorsey, III, Checkers' president, to ask that Mr. Dorsey execute a tenant estoppel certificate, a standard document detailing the status of the lease, which is routinely executed by a commercial tenant upon a new party's assumption of a landlord's interest in a lease.[5]

Mr. Dorsey completed and signed the estoppel certificate and returned it to GEJ. Therein, Mr. Dorsey affirmed that Checkers' then-current lease term expired on June 30, 2009. Therefore, in Joppa Perring's estimation, to extend its lease, Checkers would have been required to deliver to Joppa Perring, the new landlord, written notice of its election to renew no later than July 1, 2008. Notwithstanding its affirmation in

---

**4.** The termination date of the initial term was not ascertainable from the face of the lease. Instead, the initial term actually ended five years after the first day of the first full month following Checkers' first rent payment to JPLP, which was alleged to have occurred sometime prior to July 1, 1999.

**5.** GEJ had previously represented Route 5 Corporation, a corporation in which Mr. Dorsey was a partner, and Tudor Hall Farm, Inc., which was an entity whose stock was wholly owned by Route 5 Corporation, so GEJ's attorneys were acquainted with Mr. Dorsey. The real estate and bankruptcy matters handled by GEJ on behalf of Route 5 Corporation and Tudor Hall Farm, Inc. were unrelated to the purchase of the shopping center or the lease between JPLP and Checkers, and GEJ had never represented Mr. Dorsey personally.

the estoppel certificate, however, Checkers alleged that the initial lease term did not terminate until September 1, 2009.

Joppa Perring closed on the sale of the shopping center on June 16, 2008. According to Joppa Perring, while Checkers did provide written notice of its intent to extend the lease term, it did not do so until July 23, 2008. As a result of the alleged late notice, Joppa Perring informed Checkers that its lease would not be renewed and would expire on June 30, 2009. Checkers disputed the claim that the lease had not been timely renewed, maintaining that it had given oral notice of its intent and that the previous landlord's waiver of the 365 day notice requirement was binding upon Joppa Perring as the new landlord.

In October 2008, Joppa Perring filed a complaint for declaratory judgment against Checkers,[6] seeking a declaration that Checkers had failed to exercise its option to renew its lease in a timely and proper manner and that Joppa Perring was thus entitled to take possession of the leased property on July 1, 2009. Checkers answered the complaint, disputing Joppa Perring's claim that the lease had not been timely renewed, as it had exercised its option to renew the lease "by other means enforceable under Maryland law, including oral notice binding on the landlord."

In December 2008, Checkers served a subpoena and notice of deposition *duces tecum* upon GEJ, which sought to have GEJ produce documents and electronically stored information (the "disputed documents") pertaining to communications between GEJ and Joppa Perring regarding the acquisition of the shopping center and Checkers' execution of the estoppel certificate.

GEJ filed an objection to the subpoena and notice of deposition, alleging, among other things, that the requested discovery sought the production of documents protected by attor-

---

**6.** Joppa Perring amended its complaint for declaratory judgment in January 2009. The amendment appears to have done nothing more than delete a paragraph that had been duplicated in the original complaint.

ney-client privilege. Joppa Perring also filed an objection to the request for the disputed documents, adopting GEJ's arguments in support of its opposition. GEJ produced the non-privileged documents and furnished Checkers with a 40 page privilege log, which listed each document withheld from production and the basis for the withholding.

On February 18, 2009, Checkers filed a motion for an order to compel production of the disputed documents by GEJ and Joppa Perring. Therein, Checkers argued that GEJ had represented both Joppa Perring and Checkers in the completion of the estoppel certificate. Therefore, the argument continued, pursuant to the Maryland Lawyers' Rules of Professional Conduct, which states that the attorney-client privilege does not attach between commonly represented clients, the disputed documents should be produced because the privilege asserted by Joppa Perring and GEJ did not apply. Checkers alternatively contended that an implicit attorney-client relationship existed between it and GEJ because Mr. Dorsey, Checkers' president, assumed that GEJ would "act in [his] best interests," given GEJ's prior representation of entities in which he maintained a partnership interest, as well as the long-standing relationship between him and the law firm.

GEJ filed an opposition to Checkers' motion for an order to compel on March 4, 2009, averring that no attorney-client relationship existed between it and Checkers. Joppa Perring filed its opposition on March 5, 2009. On March 17, 2009, the circuit court granted Checkers' motion on the apparently mistaken belief that neither GEJ nor Joppa Perring had filed an opposition to the motion. In response to GEJ's and Joppa Perring's joint motion for reconsideration of the order granting Checkers' motion for an order to compel, the circuit court vacated its order on March 27, 2009.

On April 7, 2009, however, the circuit court again entered an order granting Checkers' motion for an order to compel, directing GEJ and Joppa Perring to produce the disputed documents to Checkers within 20 days. In its order, the circuit court did not address the issue of whether Checkers

was entitled to access to the disputed documents based on GEJ's alleged dual representation of Checkers and Joppa Perring; instead, the court ruled that GEJ's opposition to the motion for an order to compel was not presented in the proper "set-up format" and thus could not be ruled upon by the court:

> The whole idea behind the set-up format prescribed by the Court of Appeals for answering discovery and thereafter for filing a motion to compel to contest the sufficiency of an answer or response (stating the request, the response, and the reason it should be compelled) is for judicial ease and proper focus through a face plate view of what the controversy is all about. Respectfully, what both Gallagher, et. al. and Joppa Perring have done here in response to the Motion to Compel is to generalize about privileges and to state a background involving the attorney client privilege without giving me any ability to view what has been specifically requested followed by a factual statement as to why the court should limit discovery of this or that particular document because something is privileged, work product, etc. The format requirement of the rule as it now exists is so that judges do not have to flip-flop back and forth to make a decision and so they can focus on the specifics of the request and what is said about it. Then, the judge has the best chance to see if sufficient facts support the right claimed that discovery should be protected.

(Footnote omitted).

GEJ noted its timely appeal of the April 7, 2009 order to compel, and on April 28, 2009, the court entered an order whereby GEJ, Joppa Perring, and Checkers agreed to stay enforcement of the order to compel as to all parties, pending the outcome of this appeal. On June 29, 2009, the circuit court ruled that any open motions were to be marked as moot, as "[e]verything here is set to go to the Court of Special Appeals." Upon its own initiative, however, the circuit court reconsidered its June 29, 2009 order to provide an explanation. The court noted that

> [t]he issue before the court is one of procedure, not of substantive law. I have no idea whether or not the informa-

tion claimed to be protected by the Plaintiff [Joppa Perring] and the Gallagher Firm can in fact and law be protected on the basis of attorney-client privilege or work-product. This exercise will allow me to have my say as to how I feel the process was meant to work and has not yet worked in this case.

\* \* \*

It is my interpretation of the Maryland Rules of Procedure that when protection (privilege, work-product, confidential, etc.) is claimed against a discovery request that there is a cookbook methodology of presenting that issue to the circuit court and that the judge ruling on that motion has only to look to the motion to compel and the response to make a determination as to whether to grant or deny the motion or whether to send it to a hearing for testimony to be presented. Specifically, I see it this way:

- Protection through a claim or [sic] attorney-client privilege and work-product must be made in answer to interrogatories and/or a response to the request for production by specifically stating whether that you have the item or issue requested and the required facts to support a claim for protection. [Rule 2–402; Discovery Guideline No. 6 and *Kelch v. Mass Transit,* 287 Md. 223, 229, 411 A.2d 449 (1980) ]

- If the other party wants to challenge the factual support offered for protection, that party then has to file a motion to compel listing the interrogatory/answer or the request/response and the reasons why. [Rule 2–432(b)(2) ] An affidavit is required for facts stated outside the record. Rule 2–311(d).

- If the party wanting [sic] to contest the motion to compel, a response is then filed in accord with Rule 2–311 with the requirement that facts stated outside the record must be presented under affidavit. [Rule 2–311(d) ] So the judge considering the motion has only two papers to review and everything is focused on the

factual support for the claim of protection. All the context is there.

- The judge makes a decision on the papers filed unless a hearing is required to resolve factual disputes.

* * *

In my opinion the proper set up has not yet occurred in this case and until privilege or work product is properly claimed so the focus can be on the answer/response it is my responsibility to rule that the motion to compel should be granted.

(Internal footnote omitted).

Additional relevant facts will be set forth as necessary.

## DISCUSSION

■ GEJ alleges, first, that the circuit court erred in granting Checkers' motion for an order to compel because the court's order granting the motion, based on GEJ's alleged failure to conform to a certain format in its response, "misreads applicable provisions of the Maryland Rules to cast aside the important principles of attorney-client privilege and work product privilege." GEJ contends that it complied with its obligations under the Maryland Rules by furnishing a detailed privilege log in its opposition to Checkers' motion for an order to compel and that its opposition thus should have been considered by the circuit court.

Furthermore, GEJ continues, even if a particular format is required for a motion to compel, the Maryland Rules do not require a particular format for a *response* to a motion to compel. Therefore, GEJ concludes, the circuit court should not have required it to adhere to a particular format in its response to Checkers' motion for an order to compel, and the motion should not have been granted on the basis of GEJ's alleged non-compliance with that particular format.

Second, GEJ contends that, had the circuit court properly considered its opposition to Checkers' motion, it would have found that Checkers' sole basis for seeking disclosure of

privileged documents—its claim that GEJ represented both it and Joppa Perring in the estoppel certificate matter—was unsupported by anything in the record. As GEJ did not represent both Checkers and Joppa Perring, the generally understood principle that the attorney-client privilege does not apply when an attorney represents multiple parties in the same transaction would not preclude GEJ's refusal to disclose to Checkers documents created during its representation of Joppa Perring. Moreover, GEJ's argument concludes, Checkers' alternate theory, that GEJ represented Checkers by implication because Mr. Dorsey expected that GEJ would protect Checkers' best interests, fails because said theory was based solely on GEJ's past representation of companies in which Mr. Dorsey held an interest, matters completely unrelated to the estoppel certificate at issue.

Joppa Perring, as the party represented by GEJ and to whom the attorney-client privilege belongs, incorporates GEJ's arguments in its brief as *amicus curiae.* Joppa Perring adds that it is not in a position to know whether GEJ did, in fact, also represent Checkers or Mr. Dorsey in the estoppel certificate matter, but avers that the answer to that inquiry should not impact the court's decision as to whether Checkers can access Joppa Perring's confidential communications with GEJ because Joppa Perring never consented to joint representation. Absent its consent to joint representation, Joppa Perring concludes, its confidential communications with its attorneys should not be disclosed to non-parties to those communications.

Appellee Checkers counters that GEJ bore the burden of proving that the documents it refused to produce were protected by attorney-client or other privilege, and GEJ failed to meet that burden by setting forth mere allegations or generalities in its opposition to Checkers' motion for an order to compel. According to Checkers, the circuit court thus properly concluded that GEJ had failed to demonstrate that no dual representation existed and that the motion for an order to compel was properly granted.

The circuit court did not decide the issue of dual representation in granting the motion for an order to compel. Rather, it ruled that it was not then in a proper position to decide GEJ's opposition to Checkers' motion because that opposition was procedurally inadequate, making only generalizations about privileges, without giving the court "any ability to view what has been specifically requested followed by a factual statement as to why the court should limit discovery of this or that particular document because something is privileged." Consequently, it believed itself constrained to grant Checkers' motion. We need not and do not decide whether GEJ actually or implicitly represented both Joppa Perring and Checkers, such that the attorney-client privilege would not apply in a discovery dispute between Joppa Perring and Checkers, or whether the disputed documents were subject to any privilege asserted by GEJ, as the circuit court's ruling regarding GEJ's failure to comply with its required format is dispositive of this appeal.

█ In Maryland, the rules of discovery, governed by Chapter 400 of Title 2 of the Maryland Rules, "were deliberately designed to be broad and comprehensive in scope." *Ehrlich v. Grove,* 396 Md. 550, 560, 914 A.2d 783 (2007). That broad scope of discovery is described as "allowing '[a] party [to] obtain discovery regarding any matter that is not privileged ... if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.' " *Falik v. Hornage,* 413 Md. 163, 182, 991 A.2d 1234 (2010) (quoting Md. Rule 2–402).

█ The fundamental objective of discovery is to advance "the sound and expeditious administration of justice" by "eliminat[ing], as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation." *Balt. Transit Co. v. Mezzanotti,* 227 Md. 8, 13, 174 A.2d 768 (1961). Because the "sound and expeditious administration of justice" is best served when all parties are aware of all relevant and non-privileged facts, the discovery rules are intended to be

liberally construed. *North River Ins. Co. v. Mayor and City Council of Baltimore,* 343 Md. 34, 83–84, 680 A.2d 480 (1996) (Bell, J. (now Chief Judge) dissenting).

 The discovery scheme initially requires broad and comprehensive disclosures, then "provid[es] a mechanism for addressing disputes concerning the necessity of complying with a disclosure request and the adequacy of any challenged disclosure," and, finally, when required, "prescrib[es] sanctions to be imposed when a party fails to comply, either by not responding at all or responding inadequately." *Food Lion, Inc. v. McNeill,* 393 Md. 715, 733–34, 904 A.2d 464 (2006) (citing Md. Rules 2–402, 2–403, 2–432, 2–433, and 2–504). Sanctions are required to ensure that a non-complying or defaulting party does not benefit from that party's non-compliance or default. *Id.* at 734–35, 904 A.2d 464.

 When there is a claim of failure of discovery, the circuit court has broad discretion to fashion a remedy based on a party's failure to abide by the rules of discovery. *Warehime v. Dell,* 124 Md.App. 31, 43, 720 A.2d 1196 (1998). In imposing sanctions for discovery failures, a trial court has "'considerable latitude.'" *Id.* (quoting *Miller v. Talbott,* 239 Md. 382, 387, 211 A.2d 741 (1965)).

 Even if, as in the instant case, the precise action taken by the circuit court is not specifically prescribed by a rule or statute, the court has the ability, in general, to "definitively and effectively [ ] administer and control discovery, as the Maryland Rules contemplate." *North River Ins. Co.,* 343 Md. at 82, 680 A.2d 480. In other words, in addition to having been granted specific powers under the discovery rules, the circuit court also has the inherent power to control and supervise discovery as it sees fit. *Wilson v. N.B.S., Inc.,* 130 Md.App. 430, 447–48, 746 A.2d 966 (2000).

Necessarily,

when there is no hard and fast rule governing the situation, in arriving at a decision, the trial judge must exercise his or her judicial discretion. The decision he or she makes, in

turn, is reviewed for the soundness and reasonableness with which the discretion was exercised. In making that evaluation, the reviewing court must defer to the trial court. The necessity for doing so is inherent in the very nature of judicial discretion. The exercise of judicial discretion ordinarily involves making a series of judgment calls, not simply the ultimate one, but also those on which the ultimate one depends.

*North River Ins. Co.*, 343 Md. at 87, 680 A.2d 480.

■■■ Once a trial court resolves a discovery dispute, our review of that resolution is "quite narrow; appellate courts are reluctant to second-guess the decision of a trial judge to impose sanctions for a failure of discovery. Accordingly, we may not reverse unless we find an abuse of discretion." *Warehime*, 124 Md.App. at 44, 720 A.2d 1196. In defining "abuse of discretion," the Court of Appeals has said:

There is an abuse of discretion "where no reasonable person would take the view adopted by the [trial] court[ ]"... or when the court acts "without reference to any guiding rules or principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court[ ]"... or when the ruling is "violative of fact and logic."

Questions within the discretion of the trial court are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." In sum, to be reversed "the decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."

*Wilson v. John Crane, Inc.*, 385 Md. 185, 198–99, 867 A.2d 1077 (2005) (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312–13, 701 A.2d 110 (1997)).

 The burden of substantiating non-discoverability is upon the party to whom the discovery request is directed, here GEJ, and the burden cannot be met by "conclusory allegations or mere assertions." *Ashcraft & Gerel v. Shaw*, 126 Md.App. 325, 350, 728 A.2d 798 (1999). Whether a document is subject to withholding from discovery as a result of some privilege is essentially a question of fact to be determined by the trial court. *Kelch v. Mass Transit Admin.*, 287 Md. 223, 228, 411 A.2d 449 (1980). We have long adhered to the notion that the trial court is in the best position to make findings of fact because the trial court has "lived with the case for a period of time, in the process getting to know the issues, counsel, and, sometimes, the parties, up close and personal." *North River Ins. Co.*, 343 Md. at 88, 680 A.2d 480. The court's assessment of the circumstances surrounding an alleged discovery violation is "intimately intertwined with the court's exercise of discretion. Consequently, the same deference is accorded the trial court's fact-findings in a trial must be given the trial court's assessment of the circumstance surrounding a discovery situation." *Id.* at 89, 680 A.2d 480.

In the instant case, the circuit court found itself unable to determine from GEJ's opposition to Checkers' motion for an order to compel whether the disputed documents were, in fact, subject to legitimate withholding from Checkers. In so finding, the court implicitly determined that GEJ had not met its burden of substantiating non-discovery and granted the motion for an order to compel. The circuit court ruled that GEJ's opposition to Checkers' motion for an order to compel was not sufficiently detailed to allow it to make an adequate determination of the issues, and, allowing due deference to the circuit court's fact-finding and knowledge of the case, we see nothing on this record to indicate an abuse of its considerable discretion in controlling the discovery process by granting Checkers' motion on that basis.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS ASSESSED AGAINST APPELLANT.**