594 A.2d 1258

Kevin R. BERRY, et al.

v.

DEPARTMENT OF HUMAN RESOURCES, et al.

No. 1666, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Sept. 10, 1991.

462

W. Michel Pierson (Emily Miller Rody and Charles Lee Nutt, on the brief), Baltimore, for appellants.

Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Lawrence H. Norton, Asst. Atty. Gen., on the brief), Baltimore, for appellees.

Argued before WILNER, C.J., and WENNER and HARRELL, JJ.

WILNER, Chief Judge.

Fifteen employees of the State of Maryland, on behalf of themselves and members of two classes that they purport to represent, sued three State agencies and 24 State officials, in both their official and individual capacities, for misapplying the State Merit System law and thereby denying the plaintiffs opportunities for promotion and career development.[1] Three causes of action were asserted: (1) denial of the plaintiffs' civil rights under 42 U.S.C. § 1983 by virtue of due process and equal protection deprivations; (2) racial discrimination in violation of 42 U.S.C. §§ 1981, 1985, and 2000e et seq., the latter being commonly referred

---

1. Both the caption of the Complaint and the section of the Complaint identifying the defendants list three State agencies as defendants—the Departments of Human Resources, Health and Mental Hygiene, and Personnel. In Paragraph 1, the plaintiffs contend that the "Juvenile Services Agency of the State of Maryland" is also sued. Although the then-director of that agency, Linda Rossi, was made a defendant in her individual and official capacity, we see no other basis for concluding that the agency itself was named as a defendant. An inconsistency exists also with respect to Ernestine Jones, alleged to be Deputy Secretary of the Department of Human Resources. In the caption to the Complaint, Ms. Jones is named as a defendant both individually and in her official capacity, whereas in Paragraph 1, the plaintiffs contend that she is sued in her individual capacity only.

to as Title VII (of the Civil Rights Act of 1964); and (3) violation of the State Merit System law. Both damages and a variety of injunctive relief were sought with respect to each claim.

Each of these claims was based on the averment that the defendants had used various procedures available under the Merit System law to promote "preferred and pre-selected" individuals to vacant or newly created positions, in the process excluding the plaintiffs from the opportunity to apply for and obtain those positions. This was accomplished, according to the plaintiffs, by such devices as (1) downgrading positions for the purpose of transferring preferred or pre-selected individuals not qualifying for the existing positions and then upgrading the positions in order to accomplish promotions; (2) downgrading "for recruitment to avoid competition for positions by individuals, such as Plaintiffs, who are on a list of persons eligible for promotion at the original grade level"; (3) reclassifying or declassifying positions to match the qualifications of preferred or pre-selected individuals who would not meet the qualifications for the existing positions; (4) reorganizing the workforce to create new positions or modify current positions to match the qualifications of preferred or pre-selected individuals; (5) designating preferred or pre-selected individuals as acting in positions for which they were not qualified so that, in time, they would acquire the requisite qualifications; (6) altering test scores of pre-selected individuals; and (7) a "myriad of other *ad hoc* devices and schemes," none of which were described, to avoid offering promotional opportunities to the plaintiffs.

The case was specially assigned to Judge Ellen Heller who, after conferring with the parties, entered a scheduling order setting specific time limits on the filing of certain motions and the completion of discovery. No one excepted to the dates fixed in that order, and so, by its terms, it became binding on the parties. Pursuant to that order, the defendants filed a timely motion to dismiss the complaint.

After a hearing and by Memorandum and Order filed December 21, 1989, the court (1) dismissed in its entirety Count I—the § 1983 action—on the grounds that the plaintiffs had not pled a sufficient property or liberty interest in the promotions allegedly denied them and that, in any event, the post-deprivation remedies available under the Merit System law were adequate; (2) dismissed the Title VII claim in Count II on the ground that such a claim could not be brought in State court;[2] (3) dismissed the § 1981 claim in Count II with respect to all plaintiffs but two (Kevin Berry and Carolyn Washington) on the ground that they had not sufficiently alleged that they were denied the right to make new contracts; and (4) dismissed Count III in its entirety on the ground that the plaintiffs had failed to exhaust administrative remedies available under the Merit System law.

In an effort to overcome some of these perceived deficiencies, the plaintiffs, on March 15, 1990, filed a proposed amended complaint. In addition to supplementing the factual averments in the first complaint, this new pleading added two new plaintiffs, six new defendants, and a new claim (for denial of equal protection under art. 24 of the Maryland Declaration of Rights). In the meanwhile, through a motion for reconsideration and a motion for summary judgment, the defendants asked the court to dismiss the § 1981 claims of Mr. Berry and Ms. Washington—the only ones remaining in the case.

On May 24, 1990, the court entered an order striking the proposed amended complaint on the ground that, in light of the agreed scheduling order, it was filed too late. Acting then on the motion for reconsideration, the court, on grounds of sovereign immunity, dismissed Mr. Berry's and Ms. Washington's claims under § 1981 to the extent that

---

**2.** This order was entered before the Supreme Court made clear in *Yellow Freight Systems, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), that such claims *could* be filed in State courts. The plaintiffs do not complain about that aspect of the court's ruling in this appeal, however.

they sought any relief against the State agencies and any monetary relief against the State officials in their official capacities. The court disposed of the balance of those claims (against the State officials in their individual capacities) by entering summary judgment on September 6, 1990. The court concluded that Mr. Berry's claim was barred by limitations and that Ms. Washington had failed to show an act of discrimination. This appeal followed, in which some but not all of the adverse decisions below are challenged.

## Striking the Amended Complaint

■ A predictable path for the litigation emerged early in its course. The defendants' first response would be a motion to dismiss the complaint. If they lost that motion, or to the extent that they did, discovery would then take place, following which the defendants would attempt to prevail through a motion for summary judgment. If that was unsuccessful, the plaintiffs would try to certify one or both of the classes they purported to represent, and the case would proceed to trial.

Recognizing this anticipated course, the court, on October 13, 1989, entered a Scheduling Order that set certain times, agreed to or acquiesced in by the parties, for the filing of these motions and responses, the commencement and completion of discovery, and for trial. The contemplated motion to dismiss was to be filed by October 25, 1989, the plaintiffs' response was due by November 16, 1989, and a hearing on the motion was scheduled for December 11, 1989. Discovery was to commence no later than January 2, 1990 and be completed by April 16, 1990. Motions for summary judgment were due by May 1, 1990, responses 15 days later. The motion for class certification was to be filed by February 16, 1990. Trial on the merits was scheduled for June 4, 1990, and the Order stated that "[a] determination will be made as soon as possible after the motion to dismiss as to whether this date should be postponed." It was in fact postponed.

The dates set for the motion to dismiss were met. The court's initial response to the motion, dismissing Counts I and III and most of the claims in Count II was through an order filed December 21, 1989. On January 12, 1990, counsel for the plaintiffs wrote to the court objecting to any change in the Scheduling Order with respect to discovery. In that letter, she informed the court that the plaintiffs intended to file an amendment to the Complaint "within the next week." That was not done, and so the defendants limited their discovery to the one surviving claim of the two remaining plaintiffs—Berry and Washington. On February 23, they filed interrogatories and a request for documents directed at those two plaintiffs.

The proposed amended complaint was not filed until March 15, 1990. As we observed, it not only sought to resuscitate the claims of the 13 plaintiffs that were dismissed in December but also added two new plaintiffs, six new defendants, and a new cause of action. In striking the amended complaint, the court noted:

"By waiting so long, Plaintiffs effectively prevented the Defendant[s] from investigating the Amended Complaint or issuing new discovery requests, as the Scheduling Order required that all discovery be completed by April 16, 1990. In addition, the Amended Complaint thwarted the State's ability to prepare for the motion for summary judgment which was contemplated by May 1, 1990.

By allowing the Plaintiffs to file an amended complaint at this point in time, all of the enormous time and expense the parties and this Court have given to the Motion to Dismiss, Motion for Reconsideration, and now the Motion for Summary Judgment would be laid to waste. Further, it would make a mockery of the Scheduling Order, as Plaintiffs themselves recognize it would have to be totally revised to accommodate the Amended Complaint."

The court was also aware that the plaintiffs had had plenty of time to prepare their case and develop their facts. Before this lawsuit was filed, the plaintiffs who had filed a nearly identical action against the defendants in Federal

court, had voluntarily dismissed the first and third claims of their complaint after a companion case was dismissed on the merits by the court. This is not a case, then, in which the plaintiffs were subjected to unduly stringent time requirements that they could not meet. As noted, they volunteered to the court that an amended complaint would be filed by January 19, 1990.

Ignoring the thrust of the court's reasoning—that if the amended complaint were allowed, the time and money that went into the discovery and the preparation for the motion for summary judgment would have been wasted—and asserting that its decision "was based primarily on the fact that permitting the amendment would require an alteration in the schedule provided for by the court's scheduling order"—the plaintiffs complain that the court ignored the command that amendments be freely allowed and thus abused its discretion in striking the amended complaint. We disagree.

It is true, as plaintiffs allege, that Md.Rule 2–341(c) states that amendments to a pleading "shall be freely allowed when justice so permits," but that has to be read in conjunction with Rule 2–504(c), which provides that a pretrial scheduling order "controls the subsequent course of the action but may be modified by the court to prevent manifest injustice." The court's action here was not taken in blind, arbitrary allegiance to its scheduling order, but rather to prevent what it regarded would be an injustice. The concern was not over the fact of the amendments but their timing. The plaintiffs were not precluded from amending their complaint; they were precluded from amending it nine weeks after they said it would be amended when, in the meantime, the defendants and the court were led into devoting their energies and resources into dealing with what remained of the initial complaint. We find no abuse of discretion. *See Eagle–Picher v. Balbos,* 84 Md. App. 10, 25–34, 578 A.2d 228 (1990), *cert. granted,* 322 Md. 737, 589 A.2d 968 (1991).

*Count I—Violation of § 1983*

■ The thrust of Count I is that, by using the various techniques listed, the defendants excluded the plaintiffs from the opportunity to compete for and obtain better positions in State service. Preliminarily, we note several problems with the particular averments in that Count. For one thing, it is ambiguous with respect to whether the plaintiffs were actually eligible for the positions they claim went to other persons. In complaining about the one technique of downgrading positions for recruitment, they allege that they were on lists of persons eligible for promotion to the positions at the original grade level, but neither that averment nor anything like it appears with respect to any of the other specific techniques of which they complain. In ¶ 57, they contend that the appointment of preferred and pre-selected persons "to State positions to which the Plaintiffs are *entitled*" (emphasis supplied) deprived them of due process and equal protection. Nowhere else in the Complaint do they aver an *entitlement* to any other position. In their brief, plaintiffs explain that they "do not contend that they have any absolute entitlement to promotions" but that they "do have a protectible interest in fair application of the promotion procedures." We take it, then, that they are abandoning any suggestion that they were actually entitled to any position denied them, leaving us only with the open question of whether, even by averment, they were in fact eligible for any position that was given to another.

A second question has to do with their characterization of the challenged techniques. Unlike the situation in *Andre v. Montgomery Co. Personnel Bd.*, 37 Md.App. 48, 375 A.2d 1149 (1977), upon which they rely, they do not contend that any of these techniques were impermissible, *i.e.*, illegal, under the Merit System law. Indeed, they tell us in their brief that "the heart of plaintiffs' claim was that defendants used practices *that on their face were legal,* but whose purpose and effect was to subvert the system." (Emphasis added.) Their complaint seems to be that those

facially permissible techniques have been applied arbitrarily, without proper standards, and that, as so applied, their advancement opportunities have been unconstitutionally infringed.

The Circuit Court approached this claim piecemeal. It first concluded, based on *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that State agencies and, except when sued for prospective injunctive relief, State officials in their official capacities were not "persons" within the meaning of § 1983, and that the plaintiffs were therefore entitled to no relief against the State agency defendants and no monetary relief against the State official defendants. The plaintiffs do not contest that ruling in this appeal. The court then concluded that the Complaint did not allege a violation of any liberty interest on the part of the plaintiffs. That is also not contested here.

The two conclusions that *are* challenged in this appeal are that (1) the Complaint failed to make out a case of violation of a cognizable property interest, and (2) even if it did, there was no Constitutional deprivation (and therefore no action under § 1983) because the State, through its Merit System law, provided adequate post-deprivation procedures. We need not consider the second of these conclusions because we believe that the court was correct on the first.

When the ambiguity in the allegations laid out in the Complaint is peeled away, as above, the focus becomes more narrow and more clear. What is it that the plaintiffs are entitled to and how has that been denied them? They say that they are entitled to a fair implementation of the law governing promotions and that, by using techniques permitted under the Merit System law in an unfair or arbitrary manner, the law was not fairly implemented as to them. They point to Md.Ann.Code, art. 64A, § 18(e), which they say "stipulates that vacancies shall be filled by promotion" and to §§ 16, 17, and 22, which set forth "a procedure intended to insure the systematic filling of positions based on merit."

In point of fact, § 18(e) says more than what plaintiffs contend. It says, in relevant part that "vacancies shall be filled by promotion *as far as is consistent with the best interests of the classified service, in the judgment of the Secretary [of Personnel]*." (Emphasis added.) Indeed, art. 64A gives a great deal of discretion to the Secretary in the implementation of the law generally and the equal employment opportunity program in particular. *See,* for example, §§ 11, 12B, 12H, 15, 15B, 16, 17(d), 24, 37A. A number of the techniques complained of are specifically committed to the discretion of the Secretary. Section 16, for example, allows the Secretary to establish new classes of positions and to combine, alter, or abolish existing classes. When satisfied that a class is unique to one agency, she may permit the appointing authority to recruit and certify a list for that unique class. § 17(a). Eligibility for examinations is subject to some control by the Secretary. § 18(c). She may "review any positions in any classes of employment in the State government, and . . . recommend to the appointing authority a plan of reorganization, reassignment, or elimination of the positions reviewed." § 15B. She may approve a request to certify a person "with specific job-related qualifications or for a specific geographic area." § 17(d). She may limit eligibility for examinations based on certain enumerated factors "and other qualifications, except as hereinafter provided that are in the judgment of the Secretary prerequisite to the performance of the duties of such positions. . . ." § 18(c). See also § 22(a). Even as among persons on an eligibility list, all are not required to be treated equally. Veterans, for example, are given statutory preferences. § 18(c).

Much of this statutory discretion has been implemented and refined by regulations adopted by the Secretary. Some of these regulations deal with the classification, reclassification, and declassification of positions (COMAR 06.01.01.10–14), the appointment of persons to acting positions (COMAR 06.01.01.14), allowing persons who do not possess necessary qualifications at the time of an examination but who will

possess them within six months to take the examination (COMAR 06.01.01.20), rating competitors on a list by reason of education, experience, or seniority (COMAR 06.01.01.22), by the person's current employment status (COMAR 06.01.-01.31(B)), and by geographical area (COMAR 06.01.01.-31(C)), and promoting persons, without examination, through reclassification of positions (COMAR 06.01.01.13).

In short, apart from the bald allegation, for which no supporting facts are given, that test scores were altered, the devices and techniques complained of are part and parcel of the Merit System and part of the fabric of how it is intended to be applied. In certain instances, it is not impermissible to appoint and promote preferred or pre-selected people, depending on how and why they were preferred or pre-selected. Any property interest that the plaintiffs may have in the application of the Merit System, therefore, is in the application of the whole system authorized by law and not just in isolated parts of it.

In *Leese v. Baltimore County*, 64 Md.App. 442, 457, 497 A.2d 159, *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985), we held that a property interest for purposes of § 1983 "ordinarily can be said to exist only when there is a guarantee of continued employment or promotion." The effort here is to extend that property interest to a guarantee, not of promotion itself but of an opportunity for promotion. Even if we were willing to accept such an extension, the fact is that the Complaint before us, read in conjunction with the State Merit System law upon which it is based, does not establish that the plaintiffs were denied that opportunity, as allowed under that law. Most of the out-of-State cases relied upon by plaintiffs appear to be based on personnel systems quite different than the Maryland system or upon illegal circumventions of the law, and are therefore not apposite in the case now before us. For these reasons, we find no error in the disposition of Count I.

### Berry's Claim—Limitations

■ The one claim of Kevin Berry that survived the motion to dismiss and that is pressed here was that stated

in ¶ 69B of the Complaint. Berry had earlier alleged that he was black and that he had commenced employment with the Department of Human Resources in 1982. In ¶ 69B, he stated:

"In August, 1986, Plaintiff Berry discovered that a white female employee with no prior experience (whereas Plaintiff Berry had had two years experience performing the duties of this position) and lessor [sic] qualifications had been promoted during a prior month, to the position of Administrative Officer III, grade XV, for which Plaintiff Berry had applied. Plaintiff Berry's name had been removed from the list of potential candidates. Further, without explanation, Plaintiff Berry was removed from his supervisory duties and responsibilities during the summer of 1986."

Evidence obtained during discovery showed that the promotion in question had occurred in July, 1986 and that Berry had learned of it on August 4, 1986. This action was filed August 14, 1989—ten days beyond the three year period commencing August 5, 1986. Unless tolled, limitations clearly bars the action.

Berry argues that limitations was indeed tolled when, in March, 1989, he filed an identical action in Federal court. Upon filing this action, however, he voluntarily dismissed the § 1981 claim from his Federal action. Under the current state of the Maryland law, the filing of the Federal court action, followed by a voluntary dismissal of the claim, does not toll the running of limitations. *Walko Corp. v. Burger Chef,* 281 Md. 207, 378 A.2d 1100 (1977); *Shepard v. Nabb,* 84 Md.App. 687, 581 A.2d 839 (1990). *Compare Bertonazzi v. Hillman, Adm'x,* 241 Md. 361, 216 A.2d 723 (1966), which the *Walko* Court held "carved out a narrow exception to the traditional rule against engrafting implied exceptions upon the statute of limitations in certain situations where the sole reason for the dismissal of the prior action was improper venue." 281 Md. at 214, 378 A.2d 1100. That, of course, is not the situation here. Nor, in our view, is *Furst v. Isom,* 85 Md.App. 407, 584 A.2d 108 (1991)

of any assistance to Mr. Berry. The facts there, which justified another narrow exception to the anti-tolling rule, were peculiar and far more compelling than those here.

*Carolyn Washington's Claim—Summary Judgment*

■ Ms. Washington's claim, set forth in ¶ 73A of the Complaint is that:

"In July 1988, Plaintiff Washington was denied the opportunity to apply for and compete for the position of trainer, (Cuban Services Specialist IV) in the office of training and staff development, OIM, DHR. A white female administrative specialist II was placed in the position without notice to other potential applicants or interviews, etc."

In entering summary judgment on this claim, the court concluded that (1) Ms. Washington had offered no facts to support her contention that there was a vacancy or that she was qualified for the position, and (2) the defendants had shown through uncontroverted evidence that there really was no vacancy—that duties previously exercised by one employee had been reassigned to another employee fully qualified to handle them and that Ms. Washington was not considered for the reassignment because she was not in the unit. Ms. Washington does not contest any of these conclusions. She argues instead that this was another example of how the defendants "accomplished their illegal ends by using means to fill positions other than the legitimate means that are available through the merit system." The problem is that she has not shown how what occurred was illegal or illegitimate. The defendants' evidence sufficed, for summary judgment purposes, to show that the merit system was not abused and that Ms. Washington was not improperly denied a promotion.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.