*Sandra Watson v. Rodney W. Timberlake, et al*., No. 38, September Term, 2020, Argued: February 10, 2021. Opinion by Albright, Anne K., J.


**SCHEDULING ORDER – EXPERT DISCLOSURES**
Where a Scheduling Order requires compliance with Rule 2-402(g), the identification of a "placeholder expert," that is an expert identified to "hold place" until he or she forms an opinion or until the proponent decides which of several placeholders to call at trial, does not comply with the Scheduling Order.

**DISCOVERY-RELATED SCHEDULING ORDER VIOLATIONS –**
**REASONABLE PROMPTNESS – EXPERT DISCLOSURES**
A motion to compel the opinion of a "placeholder expert" should be filed with reasonable promptness.  Rule 2-432(d).

**DISCOVERY-RELATED SCHEDULING ORDER VIOLATIONS – SANCTIONS**
Sanctions for discovery-related violations of a Scheduling Order are not to operate as a windfall but instead are intended to relieve the surprise or prejudice a party suffers when his opponent fails to abide by the Scheduling Order.

**DISCOVERY-RELATED SCHEDULING ORDER VIOLATIONS --**
**REASONABLE  PROMPTNESS**
Where litigants do not use the Scheduling Order's established pretrial mechanisms, or the discovery rules, to address a known discovery dispute with reasonable promptness, the trial court does not abuse its discretion in declining to consider sanctions at trial.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 38

September Term, 2020

_____

SANDRA WATSON

v.

RODNEY W. TIMBERLAKE, ET AL.

_____

Leahy,
Gould,
Albright, Anne K.
    (Specially Assigned),

JJ.

_____

Opinion by Albright, J.

_____

Filed:  July 2, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On November 4, 2015, at an intersection in Prince George's County, the car driven by Appellant Sandra Watson ("Watson" and plaintiff below) hit a trash truck. Appellee Bates Trucking Company, Inc. ("Bates" and defendant below) leased the truck, and at the time of the collision, Bates's employee, Appellee Rodney W. Timberlake ("Timberlake" and defendant below), was driving the truck.[1] Watson filed a negligence action in the Circuit Court for Prince George's County. Four months before trial, Timberlake and Bates identified an accident reconstructionist as an expert trial witness, but did not supply his actual opinion. Three days before trial, Timberlake and Bates told Watson that the reconstructionist would describe what Watson should have been able to see as she neared the intersection. On the first day of trial, Watson orally asked Judge Judy L. Woodall to exclude the reconstructionist's opinion as late. Judge Woodall denied Watson's motion, concluding that the issue was a discovery dispute that Watson should have raised earlier. Watson's motion to strike the opinion also failed. Following the jury's verdict for Timberlake and Bates and the denial of Watson's new trial motion, Watson noted this appeal. She presents three questions for our review,[2] which we consolidate as follows:

---

[1] Two other defendants, Unity Disposal and Recycling, Inc. and Unity Disposal and Recycling, LLC, were voluntarily dismissed on September 18, 2019.

[2] These are:

I.    Whether the trial court abuse[d] its discretion in denying Plaintiff's motion to exclude David Plant, P.E., Defendants' accident reconstructionist, where Defendants did not disclose Mr. Plant's opinions and the ground for the opinions until four days (two business days) before trial in violation of the trial court's scheduling order and to the prejudice of the Plaintiff?

I. Whether the trial court abused its discretion in declining to exclude or strike the expert testimony of Timberlake's and Bates's accident reconstructionist because their disclosure of his opinion violated the Scheduling Order; and

II. Whether the trial court abused its discretion in denying Watson's motion for new trial.

Finding no abuse of discretion, we affirm.

## BACKGROUND

On November 4, 2015, Watson was driving her grandson to elementary school, traveling northbound on Route 202 toward Dunloring Drive, at approximately 45 miles per hour, five miles per hour below the posted speed limit. At nearly the same time, Timberlake, travelling southbound, was attempting to cross northbound Route 202 to Dunloring Drive. Watson testified at trial that Timberlake never yielded to her and turned into her path of travel. Watson said she tried to swerve but was unable to avoid hitting the truck. Timberlake testified that he stopped to allow a group of cars to pass, crossed Route 202 at a break in the traffic, and turned onto Dunloring Drive. He saw Watson approximately a quarter mile away, far enough, he thought, to allow the turn. As he turned, though, Timberlake said he thought Watson was driving at an excessive rate of speed and appeared distracted. Timberlake accelerated through the intersection but not before

II. Whether the trial court abuse[d] its discretion in denying Plaintiff's renewed motion to exclude and motion to strike Mr. Plant where Defendants made no good faith or earnest attempt to comply with the court's scheduling order, given that Mr. Plant conceded that Defendants did not contact him until the month before trial to complete his substantive evaluation, which was not completed until the weekend before trial?

III. Whether the trial court abuse[d] its discretion in denying Plaintiff's motion for new trial on the same basis?

2

Watson hit the back right end of the truck. Claiming substantial injuries and damages, Watson filed suit on July 2, 2018, and requested a two-day jury trial. The case was assigned case number "CAL18-19998."

On March 28, 2019, the circuit court issued a Scheduling Order that was " . . . not [to] be modified except by order of court upon a showing of good cause." For defense expert witnesses, the court ordered that 30 days before the pretrial conference, "Defense Experts, if any, [be] identified per Maryland Rule 2-402(g) or 2-504.2(9)." All discovery was to completed 60 days prior to trial.[3] For "discovery disputes," the Scheduling Order assigned Judge Tiffany H. Anderson, as this was a case ending in "8." Judge Anderson would set hearings ". . . where appropriate, no later than thirty (30) days after the motion and response have been filed." Failures to comply with the Scheduling Order could "result in the imposition of appropriate sanctions." For disputes over " . . . any provision of the [Scheduling] Order[,]" the court assigned Civil Coordinating Judge John P. Davey.

On July 25, 2019, in answer to Watson's request for production of documents, Timberlake provided the fee schedule and curriculum vitae for David Plant, an accident reconstructionist that Timberlake intended to call as an expert witness at trial.[4]

---

[3] At the time, there was no trial date set. The December 3-5, 2019 trial date was set at the October 4, 2019 pretrial conference.

[4] Plaintiff did not propound interrogatories or a request for production of documents to Bates. Nonetheless, the parties appear to have treated Watson's discovery requests to Timberlake as being directed to Timberlake *and* Bates. For example, Timberlake and Bates asserted that Plant's CV and fee schedule were produced to plaintiff " . . . as part of Defendant*s'* responses to Plaintiff's request for production of documents." (emphasis added). As to Timberlake's interrogatory answers, Watson said "[i]n *their* interrogatory

3

On August 6, 2019,[5] the Scheduling Order's first deadline for disclosure of defense

experts, Timberlake and Bates again identified Plant. Specifically, Timberlake and Bates

said:

> David E. Plant, P.E., D.P Plant & Associates, 3800 Argyle Terrace, N.W., Washington, D.C. 20011. Mr. Plant is an accident reconstructionist and a registered professional engineer. Mr. Plant is expected to proffer opinions to a reasonable degree of scientific and engineering probability. Mr. Plant's opinions will be based on his education, training, and experience, and a review of the case materials, including, but not limited to, police reports, photographs, deposition testimony, the opinions or reports of any other expert, and other records produced in discovery. It is anticipated that Mr. Plant may visit the scene of the accident. He may issue a report, setting forth his professional opinions to a reasonable degree of probability within his field of expertise and setting forth the bases for each such opinion. Mr.

answer*s* related to the identification of expert opinions, Defendant*s* only indicated that **their** disclosure would be done in accordance with the Court's scheduling order . . ." (emphasis added). This treatment of Timberlake's discovery responses continued on appeal before this Court. In her opening brief, for example, Watson said of Timberlake's answer to Interrogatory No. 10, "[i]n fact, as noted, Interrogatory Answer No. 10 reflected that Defendant*s* would identify experts by filing an expert designation as required by the scheduling order." (emphasis added). In their brief, Timberlake and Bates asserted that " . . . *Appellees* had formally stated to Appellant, her counsel, and/or to the Court on at least six (6) separate occasions that *Appellees* were designating Mr. David Plant as an accident reconstruction expert to testify on *their* behalf at trial: 1) July 25, 2019 document production, which included David Plant's CV and Fee Schedule; . . ." (emphasis added). Perhaps this melding of Timberlake and Bates for purposes of interrogatories and document production was to be expected given Watson's pursuit of vicarious liability and Timberlake's and Bates's admissions that Timberlake was acting within the scope of his employment when the collision happened. In any event, here, no one outlines different outcomes for Timberlake and Bates based on Watson's having propounded written discovery requests to one but not the other. Neither do we.

[5] When issued, the Scheduling Order set a July 17, 2019 pretrial conference. On May 22, 2019, it was postponed to September 5, 2019. Accordingly, the deadline for expert witness designation was August 6, 2019. When Judge Anderson scheduled a second pretrial conference on October 4, 2019, the deadline for expert witness designation was arguably delayed to September 4, 2019. Watson suggests as much in her opening brief before this court.

Plant *may* also testify in rebuttal to Plaintiff's expert's opinions and testimonies. A copy of Mr. Plant's *curriculum vitae* is attached hereto.

On August 9, 2019, Timberlake served a response to Watson's interrogatories.[6] To Watson's Interrogatory No. 10, which asked Timberlake to identify any expert he intended to call, and, as to each, "state a) the subject matter on which the expert is expected to testify; b) the qualifications of each such expert; and c) the substance of the facts and opinions to which the expert is expected to testify[,]" Timberlake told Watson that "[s]ubject to the foregoing General Objections, Defendant states that he will identify . . . experts in accordance with the Maryland Rules and the Scheduling Order entered in this matter."

On August 30, 2019, the parties filed Pretrial Statements. Watson "reserved the right" to call the "[d]efendant's [sic]" expert witnesses as her own, but did not mention the fact of Plant's missing opinion.[7] Timberlake and Bates again identified Plant and added two other expert witnesses. As to Plant, Timberlake and Bates said

> David Plant, P.E., Plant & Associates, 3800 Argyle Terrace, N.W., Washington, D.C. 20011. Mr. Plant is an accident reconstructionist and a registered professional engineer. Mr. Plant is expected to proffer opinions to a reasonable degree of scientific and engineering probability. Mr. Plant's opinions will be based upon his education, training, and experience, and a review of the case materials, including, but not limited to, police reports, photographs, deposition testimony, the opinions or reports of any other expert, and other records produced in discovery. It is expected that Mr. Plant will issue a report setting forth his professional opinions to a reasonable degree of probability.

---

[6] Timberlake gave Watson an unsigned response on July 25, 2019.

[7] Litigants may raise "[a]ny other matter" in a pretrial statement. Rule 2-504.2(12).

On September 5, 2019, at a telephonic pretrial conference, Judge Anderson determined that liability was "seriously in dispute."  As to the number of expert witnesses, Timberlake and Bates repeated three.  The parties mentioned challenges in deposing one of Watson's experts and a second pretrial conference was scheduled with Judge Davey for October 4, 2019.

On October 4, 2019, at the second telephonic pretrial conference, Judge Davey scheduled a three-day jury trial for December 3-5, 2019.   As to expert witnesses, Timberlake and Bates continued to indicate three. Judge Davey ordered a November 15, 2019 deadline for expert depositions and warned counsel that failure to follow that deadline could mean experts would not be able to testify.[8]

On November 29, 2019, Timberlake and Bates filed an Amended Pre-Trial Statement again identifying Plant.  Specifically, they said

> David Plant, P.E., D.P. Plant & Associates, 3800 Argyle Terrace, N.W., Washington, D.C. 20011. Mr. Plant is an accident reconstructionist and a registered professional engineer.  Mr. Plant is expected to proffer opinions to a reasonable degree of scientific and engineering probability.  Mr. Plant's opinions will be based upon his education, training, and experience, and a review of the case materials, including, but not limited to, police reports, photographs, deposition testimony, the opinions and reports of any other expert, and other records produced in discovery, as well as his investigation pertaining to the location of the accident. Mr. Plant is expected to testify regarding the details of the accident, the location of Plaintiff's vehicle at the time the truck turned across the northbound lanes of Route 202/Largo Road, and what Plaintiff should have been able to view when approaching the intersection of Route 202/Largo Road and Dunloring Drive.

---

[8] The record contains no transcript from either pretrial conference.  The number of expert witnesses for Timberlake and Bates, as well as Judge Davey's comment about the consequences of failure to abide by the November 15, 2019 deadline, appeared in Timberlake's and Bates's Opposition to Watson's Motion for New Trial.

6

At the start of trial on December 3, 2019, Watson moved orally to preclude Plant from testifying, a motion on which Judge Woodall reserved until December 4, 2019. Having received and reviewed Timberlake's and Bates's written opposition overnight, Judge Woodall asked Watson why she had failed to bring the matter to the court's attention pretrial. Watson indicated she was "taken by surprise here," that she thought Timberlake and Bates had abandoned Plant as a witness, and that it was not her duty to force Timberlake and Bates " . . . to fulfill their duties of disclosure." After showing Judge Woodall a copy of Timberlake's and Bates's expert designation,[9] Watson pointed out that in it, they had failed to provide Plant's opinion or the factual basis for it. Calling the failure to provide Plant's opinion a "discovery violation" also,[10] Watson drew Judge Woodall's attention to the "*Taliaferro* factors,"[11] and outlined how they applied. Timberlake and Bates countered that expert witnesses cannot be excluded on the basis of discovery violations brought up for the first time at trial, citing *Food Lion v. McNeil*, 393 Md. 715 (2006).

---

[9] Watson showed Timberlake's and Bates's expert designation to Judge Woodall on December 3, 2019.

[10] Timberlake and Bates argue that Watson did not describe their failure to disclose Plant's opinion as a scheduling order violation until Watson moved for a new trial. As a consequence, they argue, Watson's claim that they violated the Scheduling Order was either not preserved or not properly the subject of a new trial motion. Given our holding, we need not reach these issues.

[11] See *Taliaferro v. State*, 295 Md. 376, 390-91 (1983). These factors apply in civil cases, as well. *Heineman v. Bright*, 124 Md. App. 1, 8 (1998).

After doubting Watson's claim that she was surprised, Judge Woodall denied Watson's motion. Judge Woodall said:

> Counsel, I'm denying your request to keep out the expert. I do believe that it is a discovery issue. One that should have been, you know, dealt with prior to this hearing. I have reviewed the memorandum and cases provided by both sides. I have looked at the discovery rule as well as those two, last two, exhibits you provided for the Court. I have one. I'll bring it in. And so, you know, again, I'm denying it as to admissibility. You can cross-examine and if, you know, the foundation is not there, we'll cross that bridge when we get to it.

Thereafter, Timberlake and Bates called Plant, who corroborated their theory that had Watson been paying attention, she would have had "ample" time to see the trash truck and avoid the collision. He related that on November 14, 2019, he had observed an "exemplar" truck that Timberlake drove at the accident site, and, among other things, explained that "between 8 and 8.5 seconds" elapsed between the exemplar's having stopped and the place of the collision. According to Plant, "between 3.2 and 4.7 seconds" elapsed between the front of the exemplar's "encroaching into the left northbound lane of Route 202" and the collision. And "4.9 to 6.4 seconds" elapsed between the exemplar's "encroaching into the left turn lane . . . to the area of impact."

Thereafter, through Plant, Timberlake and Bates introduced three photographs Plant caused to be taken on November 30, 2019, each depicting what Watson would have been able to see as she traveled her admitted speed of 45 miles per hour toward the truck. Thus, when the truck stopped, Watson would have been 525 feet away. When the front of the truck was encroaching into the left turn lane, Watson would have been 350 feet away.[12]

---

[12] At one point in his testimony, Plant said that Watson was 353 feet away.

When the truck was encroaching into the left northbound turn lane of Route 202, Watson would have been 241 feet away.

After Plant's testimony, Watson moved to strike it. To her previous reasons, she added that because Plant formed no opinion until at least November 14, 2019, Timberlake and Bates had no opinion to disclose when they identified Plant, and that she was not obliged to "chase down" Plant's opinion. Judge Woodall denied Watson's motion.

At the close of trial, the jury returned a verdict in favor of Timberlake and Bates.

On January 13, 2020, Watson moved for a new trial, claiming she was denied a fair trial. She argued that Timberlake and Bates violated the Scheduling Order by failing to disclose Plant's opinions " . . . until three days before trial." As a consequence, Watson said, the jury was left with a "unilateral pronouncement" of the accident's cause. She wanted a new trial with an "even expert playing field." On February 6, 2020, following the filing of Timberlake's and Bates's opposition, Judge Woodall denied Watson's new trial motion.

This timely appeal followed.

### STANDARD OF REVIEW

We review a circuit court's decision not to sanction a scheduling order violation for abuse of discretion. *Butler v. S&S P'ship,* 435 Md. 635 (2013); *Admiral Mortgage v. Cooper*, 357 Md. 533, 545 (2000)("[T]he appropriate sanction for a discovery or scheduling order violation is largely discretionary with the trial court."); *Livingstone v. Greater Washington Anesthesiology & Pain Consultants*, *P.C.*, 187 Md. App. 346, 388 (2009)("A trial court's discretionary rulings will be disturbed only upon a finding of an

9

abuse of discretion.").    A new trial motion is committed to the sound discretion of the circuit court; its discretionary decision is "rarely, if ever, disturbed on appeal." *Buck v. Cam's Broadloom Rugs*, 328 Md. 51, 59 (1992)(cleaned up).

## DISCUSSION

Watson argues that Timberlake's and Bates's late disclosure of Plant's opinion amounted to a violation of the court's Scheduling Order, and that the circuit court's failure to exclude it was an abuse of discretion.   In concluding that the dispute should have been handled before the trial date, the circuit court failed to address the *Taliaferro* factors, along with Timberlake's and Bates's apparent lack of good faith.  These failures, Watson claims, amount to the kind of abuse of discretion that warrants reversal.

To be sure, Timberlake and Bates did not provide Plant's opinion when they designated him as an expert witness.  And, Judge Woodall did not analyze the *Taliaferro* factors or Timberlake's and Bates's good faith (or lack thereof) before declining to exclude Plant's testimony or grant a new trial.  But, given what happened (and did not happen) here, Judge Woodall's decision was not an abuse of discretion.  We explain.

Scheduling orders are critical[13] to the circuit court's assignment of actions for trial and the efficient management of its case load.   Rule 16-302 requires the County

---

[13] Of the purpose of scheduling orders, we have said:

[t]he purpose . . . is two-fold: to maximize judicial efficiency and minimize judicial inefficiency. Though such orders are generally not unyieldingly rigid as extraordinary circumstances which warrant modification do occur, they serve to

10

Administrative Judge in each county to " . . . supervise the assignment of actions for trial in a manner that maximizes the efficient use of available judicial personnel, brings pending actions to trial, and disposes of them as expeditiously as feasible." Rule 16-302(a). To do this, each County Administrative Judge must develop, and subject to the approval of the Chief Judge of the Court of Appeals, implement a " . . . system of differentiated case management[14] in which actions are classified according to complexity and priority and are assigned to a scheduling category ["track"] based on that classification. . ." Rule 16-302(b). Case management plans must include procedures to " . . . establish trial and motion calendars and other appropriate systems under which actions ready for trial will be assigned for trial and tried, after proper notice to parties, without necessity of a request for assignment from any party; . . ." and " . . . establish systems of regular reports that will show the status of all pending actions with respect to their readiness for trial, the disposition of actions, and the availability of judges for trial work[,]" among other features. Rules 16-302(c)(7) and (c)(8), respectively.

---

light the way down the corridors which pending cases will proceed. Indeed, while absolute compliance with scheduling orders is not always feasible from a practical standpoint, we think it quite reasonable for Maryland courts to demand at least substantial compliance, or, *at the barest minimum,* a good faith and earnest effort toward compliance.

*Naughton v. Bankier*, 114 Md. App. 641, 653 (1997)(citing *Betz v. State*, 99 Md. App. 60 (1994)).

[14] The Circuit Court for Prince George's County's current Differentiated Case Management plan appears at https://princegeorgescourts.org/DocumentCenter/View/484/Civil-Differentiated-Case-Management--Plan?bidId=.

Rule 2-504 requires scheduling orders in every civil case unless the County Administrative Judge orders otherwise in one or more specific kinds of cases. In scheduling orders, some provisions are "required" while others are "permitted." Thus, scheduling orders *must* assign civil cases to "tracks" and establish deadlines to designate expert witnesses, notify of the intent to use computer-generated evidence, complete discovery, and file dispositive motions. Rule 2-504(b)(1). Scheduling orders *may* contain limitations on discovery, provisions pertaining to "the resolution of any disputes existing between the parties relating to discovery[,]" direction to pursue alternative dispute resolution mechanisms, and scheduling and pretrial conference dates. Rule 2-504(b)(2).

Although Rule 2-504 provides no particular sanctions for the violation of a scheduling order, " . . . the case law of Maryland makes the imposition of sanctions for the violation of a scheduling order appropriate." *Dorsey v. Nold*, 362 Md. 241, 256 (2001). *See also* Rules 1-201(a) and 2-504(c). To this end, we have seen scheduling order violations asserted, and sometimes sanctioned, in a variety of circumstances. These include failure to timely amend a complaint (*Berry v. Department of Human Resources,* 88 Md. App. 461 (1991)); failure to appear at a mediation conference (*Tobin v. Marriott Hotels*, 111 Md. App. 566 (1996)); failure to timely provide a pretrial statement to the court and opposing counsel (*Betz v. State*, 99 Md. App. 60 (1994)); failure of a party's insurer's to appear at a settlement conference (*Station Maintenance Solutions, Inc. v. Two Farms, Inc.*, 209 Md. App. 464 (2013)); failure to answer interrogatories timely (*Faith v. Keefer*, 127 Md. App. 706 (1999)); and failure to timely designate expert witnesses (*Lowery v. Smithburg Emergency Medical Service,* 173 Md. App. 662 (2007)).

12

Where the asserted scheduling order violation involves a discovery failure, the trial court has wide discretion to determine what sanction, if any, is appropriate. *Admiral Mortgage, Inc. v. Cooper*, *supra*, at 545. In determining whether the trial court abused its discretion or not, we look to the "*Taliaferro* factors." *Butler v. S&S P'ship, supra,* at 307. These factors are (1) whether the disclosure violation was technical or substantial; (2) the timing of the ultimate disclosure; (3) the reason, if any, for the violation; (4) the degree of prejudice to the parties respectively offering and opposing the evidence; (5) whether any resulting prejudice might be cured by a postponement; (6) and, if so, the overall desirability of a continuance. *Taliaferro v. State,* 295 Md. at 390-31. Whether to exclude late-disclosed evidence is tantamount to deciding whether to modify a scheduling order's discovery deadlines to accommodate the late disclosure. Accordingly, in analyzing the *Taliaferro* factors or the "substantial compliance" and "good faith" necessary to support a scheduling order modification, trial courts often walk the same factual ground. *Asmussen v. CSX Transportation, Inc.*, 247 Md. App. 529, 548-49 (2020).

But just as we require substantial compliance (and good faith in complying) with a Scheduling Order's discovery deadlines, we also expect parties to resolve their known discovery disputes promptly, either informally or by using the mechanisms available under the Scheduling Order and discovery rules. *Food Lion, Inc. v. McNeil*, 393 Md. at 733-35 (2006) and *Dackman v. Robinson,* 464 Md. 189, 233-37 (2019). *See*, *e.g.*, *Asmussen v. CSX Transportation, Inc.*, 247 Md. App. 529 (2020) and *Lowery v. Smithburg Emergency Medical Service*, 173 Md. App. 662 (2007).

13

In *Food Lion, Inc. v. McNeill,* a request for judicial review of a Worker's

Compensation Commission's ("WCC") decision, the late-disclosed opinion of Mr.

McNeill's ("Claimant's") identified medical causation expert was not excluded after Food

Lion failed to challenge the adequacy of Claimant's discovery responses during the

discovery period or file a timely motion *in limine* to exclude the opinion. 393 Md. at 735.

In answer to interrogatories, Claimant timely identified the expert and the subject matter

of his testimony. Roughly one month after the court's deadline for designation of expert

witnesses, Claimant disclosed the witness's opinion: "[it] is my opinion that [Claimant's]

carpal tunnel and ulnar cubital tunnel problems are directly and causily [sic] related from

his repetitive work as a meat cutter at Food Lion." *Id.* at 724-25. On the day of trial, and

20 days after the pretrial order's deadline for the filing of motions *in limine*, Food Lion

moved to exclude the expert's opinion, a motion the trial court granted. The circuit court,

sitting *en banc*, reversed, and the Court of Appeals affirmed, explaining that

> [d]iscovery violations are cognizable by the trial court during the discovery process and, of course, are sanctionable when they are found. And, as we have seen, there are mechanisms in place for that to happen. It follows that discovery issues are best handled during the discovery period; that serves the interest of efficient trial administration. If, therefore, as the appellant maintains, the appellee's expert's report was a violation of discovery, and a substantial one, at that, it should have been, and could have been, addressed during the discovery process and, if determined to have been one, sanctioned as such.

*Id*. at 735.

In *Dackman v. Robinson,* a lead-paint case, the late-disclosed opinion of a timely-

named economic expert was not excluded when the opponent did not take earlier steps to

depose the expert or otherwise resolve the discovery dispute. 464 Md. at 233-37. Plaintiffs

14

identified an expert witness before the scheduling order's deadline, including the subject matter of the expected testimony, but did not provide that expert's actual opinion until approximately six weeks[15] before trial.  In declining to sanction plaintiffs, the trial court explained that defendants had taken no action to resolve the discovery dispute or timely seek a postponement of the trial date, and that the case was not one wherein defendants " . . . 'did not know where it was going.'"  *Dackman,* 464 Md. at 235.

In *Asmussen v. CSX Transportation, Inc.,* the opinions of two of plaintiff's experts were excluded after defendant, who had received plaintiff's "vague" designation of four placeholder experts, made numerous attempts to secure their actual opinions during the discovery period. Thus, defendant requested more information from plaintiff; filed a motion to compel that failed; deposed one expert only to learn that he was unqualified and that the studies on which he relied did not support plaintiff's causation theory; and attempted to depose a second on dates plaintiff offered but were actually bad for the expert. When plaintiff asked for a scheduling order modification to permit the late re-designation of an expert he had previously withdrawn, and to secure more time for the deposition, defendant moved to strike both experts. After examining what happened, particularly defendant's efforts in deposing the unqualifed expert, the court concluded that a "last-

---

[15] The trial date was September 9, 2014.  The expert's opinion was provided in the form of a letter dated "July 2014." Plaintiffs mailed and faxed the report to defendants on July 29, 2014.  Defendants represented that they received the report on August 4, 2014. *Dackman,* 464 Md. at 234.

minute expert swap would prejudice CSX[.]" Accordingly, the court denied modification and struck the experts.[16]  *Asmussen,* 247 Md. App. at 537-543.

In *Lowery v. Smithburg Emergency Medical Service*, a case involving claims of defamation and intentional interference with economic relations, the late-disclosed opinion of plaintiff's identified expert was excluded after defendant made a timely motion *in limine* seeking same.  *Lowery,* 173 Md. App. at 678. The scheduling order set a deadline for the designation of expert witnesses.  Plaintiff timely identified an expert witness and provided the subject matter on which he would testify.   After the discovery deadline, and 12 days before the trial date, plaintiff provided defendant a letter outlining the expert's actual opinion.   Defendant filed a timely motion *in limine* to exclude the expert's opinion as having been disclosed after the discovery deadline—a motion the court granted four calendar days before trial was to start.  *Id.*

Ultimately, discovery sanctions are not to operate as a windfall, but instead are intended to relieve the surprise or prejudice a party suffers when his opponent fails to abide by the discovery rules. *Morton v. State*, 200 Md. App. 529, 543 (2011)(citing *Ross v. State*, 78 Md. App. 275, 286 (1989)).  *Cf. Thomas v. State,* 397 Md. 557, 571 ("[t]he most accepted view of discovery sanctions is that in fashioning a sanction, the court should impose the least severe sanction that is consistent with the purpose of the discovery rules . . . (citing cases)").  For discovery violations (or scheduling order violations based on discovery requirements), therefore, " . . . 'the more draconian sanctions, of dismissing a

---

[16] The Court of Special Appeals did not review the trial court's decisions as to the second expert. *Asmussen*, 247 Md. App. at 552.

claim or precluding the evidence necessary to support a claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court.'" *Butler v. S&S P'ship, supra,* at 650 (quoting *Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 545 (2000)).  A party that delays in addressing an opponent's known discovery or scheduling order violation limits the court's ability to address the problem with a lesser sanction.  In short, though the party may not intend it, by delaying, the party seeks an impermissible windfall.

Here, the Scheduling Order offered Watson ample chance to bring the fact of Plant's missing opinion to the court's attention before trial.  After establishing a deadline for the designation of defendants' expert witnesses, and delineating what information was required in that designation, and setting a discovery deadline,[17] the Scheduling Order assigned Judge Anderson for the resolution of discovery disputes, and Judge Davey for disputes about "any provision" of the Order.  The Scheduling Order also required the filing of pretrial statements and attendance at a pretrial conference.

That Plant's opinion was indeed missing was apparent as early as August 6, 2019 (if not earlier) when Timberlake and Bates named Plant, listed his qualifications, and described the subject matter of his expected testimony (accident reconstruction), but provided no actual opinion.  The problem continued on August 30, 2019 when, in their pretrial statement, Timberlake and Bates listed Plant as one of three expert witnesses they

---

[17] Here, by virtue of the parties' agreement to delay the pretrial conference from July 17, 2019 to September 5, 2019, and the court's scheduling of a second pretrial conference on October 4, 2019, the discovery period was extended twice, extensions that afforded Watson more time to seek relief.

would call; to the September 5, 2019 pretrial conference, when Timberlake and Bates confirmed they would call three expert witnesses at trial; to the October 4, 2019 pretrial conference, when Timberlake and Bates again indicated they would call three expert witnesses; and past November 15, 2019, when, despite the deadline for expert witness depositions, Timberlake and Bates *still* failed to provide Plant's opinion. Nonetheless, Watson never filed an appropriate discovery motion, or flagged the problem in her pretrial statement, or mentioned it to either pretrial conference Judge.

Against this background, we find no abuse of discretion in Judge Woodall's decision both to analyze the situation as a discovery dispute that, under *Food Lion*, should have been raised earlier by Watson, and to decline a last-minute sanction for a scheduling order violation. On October 4, 2019, without resolving the fact of Plant's missing opinion, Watson agreed to a three-day jury trial starting 60 days later. The case then came to Judge Woodall on the scheduled trial date. The parties were ready to call the witnesses and introduce the exhibits they mentioned in their pretrial statements. By then, Watson was well past the discovery deadline and the multiple opportunities she had to address Timberlake's and Bates's failure to supply Plant's missing opinion by the August 6 or September 4, 2019 deadlines.

To avoid this result, Watson claims that it was not her burden to assure that Timberlake and Bates complied with their disclosure obligations under the Scheduling Order. Watson adds that until Timberlake and Bates provided Plant's actual opinion, Plant was merely a "placeholder" expert designated as one of several that Timberlake and Bates might have called. As a consequence, she was not aware that they would call Plant as a

18

witness, and was prejudiced by not having an opportunity to evaluate Plant's opinion or designate an accident reconstructionist of her own.

To Watson, Plant may indeed have appeared to be a "placeholder," that is an expert designated merely to "hold place" until he or she forms an opinion, or until Timberlake and Bates decided which of several "placeholder" experts to call at trial. But the Scheduling Order here did not call for the designation of "placeholder" experts. Instead, by incorporating Rule 2-402(g), the Scheduling Order required Timberlake and Bates to state " . . . the substance of the findings and the opinions to which . . . [Plant] is expected to testify and a summary of the grounds for each opinion[.]" If Watson was dissatisfied with Timberlake's and Bates's disclosure, and could not resolve the issue with good faith efforts, she was required to seek relief with reasonable promptness, Rule 2-432(d).

Had Watson sought relief, the court may have been able to address the prejudice Timberlake and Bates caused Watson[18] with a sanction less severe than exclusion.[19] Watson received Timberlake's and Bates's deficient designation on August 6, 2019. Had Watson moved to compel Plant's opinion, Judge Anderson may have compelled Timberlake and Bates to supply it. Or, because Plant expected to review deposition

---

[18] Among the problems Watson claimed was the inability to designate her own accident reconstruction expert. Given that Watson did not designate one at the deadline for plaintiff's experts, a deadline that fell 30 days before the deadline for designation of defense experts, it is difficult to see how Timberlake and Bates caused this problem.

[19] By categorizing less severe sanctions, we do not suggest that a trial court, under the correct circumstances, abuses its discretion by sanctioning a discovery failure (or a discovery-related scheduling order violation) by excluding the late-disclosed evidence.

testimony in forming his opinion, and the deposition of Watson's eyewitness, Kimberly Brooks, had not yet occurred,[20] Judge Anderson may have hastened Ms. Brooks' deposition, and extended the designation and discovery deadlines.[21] Or, Judge Anderson could have required that Plant appear for deposition at Bates's and Timberlake's expense, Rule 2-402(g)(3). And, Judge Anderson could have awarded Watson her attorney's fees in having to chase Timberlake and Bates for Plant's opinion, Rule 2-433(d). By delaying her request for relief to the first day of trial -- when these options were no longer feasible -- Watson took them off the table, and in so doing, sought what amounted to a windfall.

Watson further argues that when she declined Watson's request to exclude Plant, Judge Woodall abused her discretion by failing to consider the *Taliaferro* factors, particularly the prejudice Watson suffered by the jury's hearing Plant's unchallenged expert opinion. But a detailed analysis of the *Taliaferro* factors is not required, particularly where the court declines to consider sanctions. *Muffoletto v. Towers*, 244 Md. App. 510, 542 (2020). Having heard Watson's argument about the *Taliaferro* factors, Judge Woodall did not abuse her discretion in declining to take up the discovery dispute, or sanction Timberlake and Bates.

---

[20] Ms. Brooks was not deposed until October 18, 2019. The record does not disclose why.

[21] Judge Davey took a similar step at the second pretrial conference when he extended the deadline for expert witness depositions to November 15, 2019.

For the same reasons, we also affirm Judge Woodall's denial of Watson's new trial motion. Judge Woodall acted well within her discretion in allowing Plant's testimony. Accordingly, we see no basis for a new trial.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**